East'n. District.
*January,* 1826.

BALFOUR
*vs.*
CHEW.

Parol evidence cannot be received from a purchaser at sheriff's sale, to show the property was worth less than the conveyance expresses he was to give for it.

A promise to release a mortgage, is not a release of it.

Unless property sold by a sheriff brings more than the amount of the previous mortgages, there is no sale.

A bid at a sheriff's sale, is a bid for the absolute value, and when it is incumbered, is not a bid over and above the incumbrances.

But this bid may be made for the entire value, with the obligation to pay the mortgage; or for the value above the mortgage, subject to the prior incumbrance.

Selling the land as subject to a mortgage, does

*BALFOUR vs. CHEW.*

APPEAL from the court of the third district.

PORTER, J., delivered the opinion of the court.—The proceedings in this case have arisen out of an order of seizure and sale, obtained by the defendant, Chew, against Balfour. The latter applied for an injunction, which was granted; and on hearing, made perpetual. The defendant appealed.

The principal ground on which the prayer for an injunction rested, was a previous sale of the plaintiff's property, under a former order of seizure and sale. The purchaser at that sale, conceiving his rights to be affected by the matters at issue between the plaintiff and defendant, asked and obtained leave to intervene; and the judgment being as unfavorable to his pretensions as that of the defendant, he also appealed.

The case comes up on two records, but they have been argued together in this court, and they do not appear to require a separate consideration.

To set out at length the various documents introduced in evidence on the trial below,

BALFOUR
*vs.*
CHEW.

not make the purchaser personally liable.

would impede, rather than promote, a clear understanding of the case.

In the month of November, 1820, the plaintiff in injunction, (Balfour) purchased of the defendant a tract of land for the sum of $10,800, payable in three instalments, and gave his notes, with mortgage, to secure the purchase money.

At the time the sale was made, the land was subject to a mortgage in favor of one Charles G. Johnson, who had sold the premises to the person from whom the defendant purchased it. Johnson became a party to the act between plaintiff and defendant; and declared, that on Balfour's payment to Chew of the purchase money, he, Johnson, would release and cancel his mortgage.

Partial payments were made in pursuance of this contract, but Balfour being unable to fully comply with it, came under another obligation to Chew, on the 24th of April, 1823, by which he acknowledged to owe $5,116 : viz. $1,866 for balance of the first instalment, and $3,240 for the second. For these sums he gave his notes, and an additional mortgage on seven negroes.

These notes were transferred to William G.

Johnson, by blank indorsement, and the application for an order of seizure and sale, was made by Chew, for the use of the transferee.

The execution which the court has enjoined, is the second execution issued on this mortgage. The proceedings which took place on the first, are the source of all the difficulties the cause presents. The plaintiff insists that in consequence of that sale, he is entitled to a credit of $9,450; the defendant contends it is only $3,450.

This difference of $6,000 in the pretensions of the parties, arises from the land being sold subject to a mortgage for $6,000, for which the defendant Chew, the vendor, was responsible, he having conveyed with warranty. The plaintiff asserts, that as his property sold for that amount less than it would have done had the mortgage not existed, he is entitled to set it up against any balance that may be due to his vendor.

If the facts should be found such as he has alleged, and the legal consequences he deduces from the sale, are correct to the extent relied on, we have no doubt of his right to offer the claim against any other the defendant may have against him; and that the plaintiff in

East'n. District.
January 1826.

BALFOUR
*vs.*
CHEW.

execution, has no right to proceed to make money on a judgment, which would have been satisfied at the first forced sale under it, had it not been for an existing incumbrance for which he was responsible.

The petition sets out the circumstances in detail, of which a condensed statement has been just given.

The answer of the defendant avers:

That taking the facts as true, the plaintiff has not shown any equity;

That Balfour, at the time he made the purchase, was informed of the mortgage in favor of Johnson, and that Johnson joined in the sale, and agreed to cancel the mortgage, on the plaintiff paying the sum of $10,480, which he has failed to do;

And, that the facts alleged are untrue.

The petition of the interpleader Chinn states,

That he was the purchaser at sheriff's sale, and that the allegations in the petition would subject him to the payment of a large sum of money above the amount which he conceived he was giving for the property;

That at the time of the sale, William G. Johnson had obtained by transfer, and was the

real owner of the mortgage debt of Charles G. Johnson and of E. R. Chew, and the money collected was to be applied to extinguish the original debt due to Charles G. Johnson; that this was well known to Balfour.

That the bid of the petitioner was the absolute value of the property, and was so considered by all parties, and not for the surplus value, over and above the amount of the first mortgage.

That the amount of the petitioner's bond was improperly applied to the junior mortgage, and that being given in error, it should be cancelled, or imputed to the first mortgage.

That the petitioner has become holder and owner of all the mortgages, since the filing the petition of injunction, and is entitled to receive their proceeds.

The first question necessary to be examined, is the correctness of the opinion of the court below, refusing to hear parol testimony that the land was worth no more than the sum at which the intervener stated he bought it.

If this proof would have shown the price to be different from that which the written evidence establishes, it was illegal; if the same, it was unnecessary. No ground has been pre-

sented for a departure in this instance from the general rule, except an averment that there *was error*, or in other words, that the parol evidence would prove the transaction to be different, from that which it is shown to be by the written. Now it is obvious, that if the mere allegation, that the facts are different from those which the written documents import, be sufficient to authorise the introduction of inferior testimony, the rule ceases to have any effect; for that allegation could be made in every case, and of necessity must be made in all, or it would be idle to contradict the written proof. But it was to guard against the danger of admitting such evidence, on such allegations, that, we understand, was the reason which induced the legislature to prohibit this species of proof.

It is contended, both by the defendant and interpleader, that the mortgage for $6,000, which the plaintiff in injunction insists his land was sold subject to, did not exist; that it was merged in that given by the latter when he sold his land, and consequently he is not entitled to credit for it against the defendant.

The correctness of this position will be best ascertained, by a reference to the instru-

East'n. District.
*January* 1826.

BALFOUR
*vs.*
CHEW.

ment by which this merger is said to be produced.

It is the deed of conveyance by which the defendant sold to the plaintiff the land which was the consideration of the debt sued on. Charles G. Johnson, who then held the mortgage now alleged to be merged, became a party to this act and stipulated, " that so soon as the said William Balfour *shall have paid* unto the said Edward R. Chew the said purchase money, ($10,480) secured by said mortgage, the said Charles G. Johnson *will exonerate and release* a mortgage he has upon the said land." It is conceived unnecessary to go into any argument to show, that a promise to release a mortgage *so soon as a sum of money is paid*, is not a release *until that money is paid.* Far from the instrument proving a merger of the previous lien, it establishes the mortgagee retained it, until the second should be discharged.

The most important question in the case, is the effect of the sale by the sheriff.

The conveyance of that officer, after reciting the authority under which he acted, and describing the premises sold, states: "that having exposed the same at public sale, according

East'n. District.
*January* 1826.

BALFOUR
*vs*
CHEW.

to law, on a credit of twelve months, and subject to a balance of a mortgage given by Samuel Chew, in favor of Charles G. Johnson, dated the 7th November, 1818, for $6,000, as appears by the certificate of the parish judge, dated the 17th May, 1824, and annexed to the order of seizure, Thomas W. Chinn became the purchaser thereof, for the price and sum of $3,450 for which he gave bond and security according to law." In conformity with this deed, is the bond of the purchaser who interpleads, and it is payable to the seizing creditor.

In opposition to the apparent legal effect of these two instruments, it is contended, that notwithstanding the language used in them, the sale was for the benefit of the previous mortgage, and that the amount of the money made should be credited on it.

This conclusion is obtained from an argument which rests on the following postulates:

" That a bid at sheriff's sale is a bid for the absolute value of the property, and when it is incumbered, is not a bid over and above incumbrances.

" That at a sale by execution, of property subject to prior incumbrances, where the bid does not amount to the debt due on the prior

East'n. District.
*January* 1826.

BALFOUR
*vs.*
CHEW.

incumbrance, it is yet an absolute sale, and vests the title in the highest bidder."

The second of these grounds has been already examined, and considered untenable by this court, in the case of *De Armas* vs. *Morgan* ; the reasons on which we came to the conclusion there expressed: that there was no sale unless the property brought more than the sum for which it was previously mortgaged, appears to us, on re-examination, correct; and we therefore pass to the consideration of the other and more important question. *Vol.* 3, 604.

The proposition contained in the first ground we take to be correct: we think the act of 1817, by enacting, that the purchaser shall be personally liable for the amount of the previous mortgage, evidently contemplates the whole property should be sold, and the inconveniences which would attend the other interpretation, fortifies the construction which is fairly drawn from the expressions used in the law. But although such, in our opinion, is the true meaning of the provisions on this subject, a question of infinitely more importance in the decision of this cause arises,

and that is, how must this bid be made? must it be for the entire value, with the obligation to pay the previous mortgage out of it? or will it be sufficient for the buyer to bid the value over and above the mortgage, subject to its payment? we think either mode will meet the requisition of the act. The statute provides, " that the sheriff or other public officer making the sale, shall only receive from the purchaser the surplus for which the property shall have been sold, over and above the amount of the special mortgage." On bidding the whole amount then, no money is paid but that which remains after satisfying the mortgage: in bidding the surplus over the mortgage, and with the obligation to discharge it, he only makes the deduction before the sale, which he would and must make after. Any other construction, it appears to us, would be substituting words for things. There is no real difference between buying a thing for $3,450, to be paid the seizing creditor, with an obligation to discharge a previous mortgage for $6,000, or purchasing it for $9,450, $6,000 of which is to be retained to discharge that mortgage, and the balance to be paid the creditor at whose instance the sale is made.

BALFOUR
*vs.*
CHEW.

The sum to be paid is the same; the time of payment is the same; the persons to whom the money is to be paid the same; and the law in pronouncing on the validity of the contract must be the same, unless it overlooked facts in pursuit of verbal distinctions.

If the facts of this case brought the interpleader within the principles just laid down, we are satisfied, after much consideration, it would be our duty to hold him to the bargain, no matter how severely it might affect him; but on examining the evidence, we find they do not. Our opinion, that a bid for the surplus above the mortgage, with an obligation to discharge the incumbrance, is the same thing as a bid for the whole amount, deducting the mortgage, is based upon the idea, that in the first mode the buyer comes under the same personal obligation to discharge the mortgage, that he would had he bought in the latter. The evidence, however, furnished by the sheriff's return, and his deed of conveyance excludes this idea. The statute says, the property shall be sold subject to *the payment, by the purchaser*, of the previous mortgages or privileges. The return of the officer states, *the land was sold subject to the mortgage;* the

deed uses the same expressions, and neither
makes mention it was sold subject to the pay-
ment by the purchaser. This distinction, which
at first blush appears to partake of the nature
of those verbal ones we have this moment re-
probated, will appear, on a close examina-
tion, to be material, and change entirely the
nature of the act. If the purchaser became
personally responsible for the mortgage debt,
the amount of this engagement would make a
part of the sum he was to pay for the land,
and consequently his bid be for the ab-
solute value. But when the land alone is
made liable, there is no personal obligation
on the purchaser beyond that which he pro-
mises to pay the seizing creditor; hence the
bid can be viewed in no other light than one
for the surplus value, and so considered, we
do not think it such an one as the law sanc-
tions or permits.

As the defendant has been deprived by the
peculiar circumstances attending this case, of
offering his land to satisfy the second order of
seizure and sale, we think justice requires,
the plaintiff should be enjoined from selling
the negroes, until the defendant can exercise
the right which the law confers on him, of

East'n. District.
*January* 1826.

BALFOUR
*vs*
CHEW.

pointing out what portion of his property he wishes to give up, to satisfy the execution.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed : and it is further ordered, adjudged and decreed, that the sale and all proceeding which were had on the first order of seizure, be set aside and declared null and void; that the bond of the purchaser, T. W. Chinn, be cancelled, and all parties be restored to the situation in which they were at the time of granting the first order of seizure and sale : it is further ordered, adjudged and decreed, that the second order of seizure and sale, and all proceedings under it, be set aside, reserving to the mortgagee's creditor the right to inforce his claims according to law; that the defendant, Chew, and the interpleader, Chinn, pay the costs of the court of the first instance, and the appellee those of appeal.

*Ripley & Conrad* for the plaintiff, *Woodroff, Watts and Lobdell,* for defendant.