417 So.2d 54 (1982)
Arthur KLEINER and Richard A. Kleiner
v.
Laura Elizabeth Rist, wife of/and George Jules CIKO.
No. 14921.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Writ Denied October 1, 1982.
Joe Anderson, Slidell, for plaintiffs, appellees.
Robert J. Caluda, New Orleans, for defendants, appellants.
Before ELLIS, PONDER and SAVOIE, JJ.
ELLIS, Judge.
This is a suit by Arthur Kleiner and Richard A. Kleiner against Laura Elizabeth Rist, wife of, and George Jules Ciko, to set aside a sale from their deceased mother, Anne Elizabeth Daws Kleiner, to Mr. and Mrs. Ciko. On the day fixed for the trial, June 22, 1979, the following colloquy took place in open court:
"Mr. Anderson: `May it please the Court, Your Honor, the parties in this matter, entitled Kleiner versus Ciko, number *55 52,849 of the docket of this Court, have reached a settlement accordingly. Arthur and Richard A. Kleiner shall pay to Elizabeth Risk, wife of and George J. Ciko, the sum of thirteen thousand dollars in cash in consideration of the transfer by Mr. and Mrs. Ciko to them of the property forming the subject of this lawsuit.'
"The Court: `Who is to bear the cost?'
"Mr. Anderson: `The cost of this proceeding will be borne by the respective parties, as the costs were incurred. The costs of the act of sale transferring the property will be borne by the Kleiners. All costs of the act of sale.'
"The Court: `Is that the settlement that has been reached, Mr. Fritchie?'
"Mr. Fritchie: `That is correct, Your Honor.'
"The Court: `Let that settlement then be made the judgment of this Court.'"
Apparently, Mrs. Ciko was not pleased with the settlement, and so advised her daughter, who, in turn, consulted an attorney other than the one who represented Mrs. Ciko at the time of the above settlement. The second attorney wrote a letter to Joe Anderson, who represented the Kleiners, advising him of his representation of Mrs. Ciko, and stating that she "has rejected the settlement offered." Mr. Anderson received the letter on July 6, 1979.
Thereafter, Mr. Anderson prepared a judgment based on the above settlement, and presented it to the trial judge, making a full disclosure of the circumstances above outlined. On the morning of July 9, prior to the time the judgment was signed, Mr. Anderson encountered the Cikos' original attorney, but did not mention to him that he was going to try to have a judgment signed. After a new trial was denied, Mr. and Mrs. Ciko filed a petition for the nullity of the judgment signed by the trial judge, based on the allegation that the judgment was based on an oral compromise, which had been rescinded by Mrs. Ciko, and that Mr. Anderson was aware of the rescission. The petition was later amended to add the allegation that Mrs. Ciko was not capable of giving informed, knowing and intelligent consent to the compromise.
After trial on the merits of the nullity petition, judgment was signed rejecting the demands of Mr. and Mrs. Ciko, and they have appealed.
In this court, defendants allege that the trial judge erred in finding that there was a binding compromise as a result of the settlement reached on the trial date; that the court erred in finding that the circumstances under which the judgment was signed did not constitute ill practices; that the trial court erred in finding that Mrs. Ciko was competent to enter into a compromise; and that this nullity action is not barred by a "judicial confession" as a result of the minute entry made of the compromise agreement.
Defendants urge the nullity of the judgment on two basic grounds: first that the judgment was obtained by fraud or ill practice on the part of plaintiffs' attorney in the manner in which he had the judgment signed after learning that defendants had withdrawn their consent to the settlement; and ill practice on the part of the trial judge in signing the judgment, rendering the judgment null under Article 2004 of the Code of Civil Procedure.
Second, it is argued that the judgment is null because rendered against an incompetent, under Article 2002 of the Code of Civil Procedure.
The first legal issue presented is whether or not the colloquy in open court on June 22, 1979, resulted in a confession of judgment, binding on all parties, or was a compromise, revocable by any party because not reduced to writing and signed.
Article 2291 of the Civil Code provides:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"It amounts to full proof against him who has made it.
"It can not be divided against him.
"It can not be revoked, unless it be proved to have been made through an error in fact.

*56 "It can not be revoked on a pretense of an error in law."
In Martin v. Holzer Sheet Metal Works, Inc., 376 So.2d 500 (La.1979), the court said:
"A confession of judgment precluding an appeal need not be in writing or in a particular form. It must, however, consist of an admission by a party in the proceedings in the trial court of the validity of his opponent's claim in such a way as to leave no issue to be tried."
In the Martin case, the court stated that it was called upon to decide whether oral consent to judgment in open court constitutes a confession of judgment. In that case, a settlement was reached before trial, and the trial judge dictated the terms of the judgment agreed to into the record, with all counsel assenting thereto for the record. The court found that these circumstances were sufficient to constitute a confession of judgment, rendering the case not appealable under Article 2085 of the Code of Civil Procedure.
In the later case of Bourgeois v. Franklin, 389 So.2d 358 (La.1980), the court expressed the problem facing it as follows:
"In a tort suit, where the attorneys for plaintiff and defendant, ostensibly with the assent of their respective clients, recite in open court the fact and amount of a compromise settlement without having reduced it to writing, may one of the parties thereafter enforce the settlement?"
In the Bourgeois case, the attorneys recited in open court the terms of a compromise reached between their clients. However, no judgment, oral or written, was rendered. The court found that the compromise was unenforceable because not reduced to writing and signed, as required by Article 3071 of the Civil Code.
In reaching its conclusion, the court distinguished the Martin case, supra, on the ground that "the trial judge, in open court, recited an oral judgment into the record, fully and specifically assented to by the parties." The court further stated:
"It was argued in Martin that the statements made in open court simply amounted to a compromise and thus under La. Civ.Code art. 3071 must be in writing to be binding. The Court rejected that argument finding that what had transpired in open court was more than simply an agreement of compromise. It was, rather, a confession of judgment. In pointing to the distinctions between C.Civ.P. art. 2085, the confession of judgment provision, and La.Civ.Code art. 3071 concerning the writing requirements for settlements, the Court said, `this article [La. Civ.Code art. 3071] is placed in the code to insure proper proof of extrajudicial agreements and does not apply to a confession of judgment during proceedings in court.' Of course the in-court memorialization by counsel of an agreement of settlement is nonetheless extrajudicial in the sense that judgment of the court is not invoked."
It is clear that, in this case, the judgment of the court was invoked. The terms of the settlement were clear and were assented to by both parties. Under those circumstances, we find that there was a judicial confession of judgment, binding on both parties, either of whom was entitled to have a written judgment signed. We therefore find no ill practice on the part of plaintiffs' attorney, or on the part of the court in signing the judgment.
Article 2002 provides, in part:
"A final judgment shall be annulled if it is rendered:
"(1) Against an incompetent person not represented as required by law;"
The standards for measuring incompetency are found in Articles 1788 and 1789 of the Civil Code, which provide:
Art. 1788. "The contract, entered into by a person of insane mind, is void as to him for the want of that consent, which none but persons in possession of their mental faculties can give. It is not the judgment of interdiction, therefore, that creates the incapacity; it is evidence only of its existence, but it is conclusive evidence, *57 and from these principles result the following rules:
* * * * * *
"4. That, except in the case of death hereafter provided for, no suit can be brought, nor any exception made, to invalidate a contract on account of insanity, unless judgment of interdiction be pronounced before bringing the suit, or at least applied for before making the exception."
* * * * * *
Article 1789. "A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent."
The evidence offered in support of the claim of incompetency is that of several physicians, who stated that Mrs. Ciko's mental capacity was impaired because of certain drugs that she was taking for a heart condition. None of them could state, with any certainty, what her mental status was on June 22, 1979.
However, there is nothing to show that Mrs. Ciko has been interdicted, or that her alleged incompetency was apparent or notorious. Mrs. Ciko therefore does not fall within the ambit of either of the above two articles. See First Nat. Bank of Shreveport v. Williams, 346 So.2d 257 (La.App. 3rd Cir. 1977); Stevenson v. Beneficial Finance Co. of Hammond, 295 So.2d 880 (La.App. 1st Cir. 1974). The trial judge properly found that Mrs. Ciko failed to carry her burden of proving her incompetency.
The judgment appealed from is therefore affirmed, at the cost of Mr. and Mrs. Ciko.
AFFIRMED.