501 So.2d 280 (1986)
FIRST STATE BANK & TRUST COMPANY OF EAST BATON ROUGE PARISH
v.
SEVEN GABLES, INC., H. Samuel Davidson and Bessie Mae Davidson.
No. 85 CA 1135.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Writ Denied February 13, 1987.
*283 Ronnie Berthelot, Jr., Baton Rouge, for plaintiff.
Martin Schroeder, Jr., Baton Rouge, for defendant-first appellant Samuel Davidson.
Richard P. Reina, Denham Springs, for defendant-first appellant Bessie Davidson.
Aubrey McCleary, Jr., Baton Rouge, for defendant-first appellant Seven Gables.
Before EDWARDS, WATKINS and LeBLANC, JJ.
WATKINS, Judge.
This lawsuit arises from the default of a $350,000.00 loan and the lender's attempt to collect the balance due from the three defendants, two of whom guaranteed its payment, one of whom assumed the loan obligation.
Defendants Samuel and Bessie Davidson guaranteed the payment of a (hand) note dated "1-19-77," but the only hand note introduced at trial was dated "January 20, 1977." Defendant Seven Gables, Inc. assumed the obligations in a collateral mortgage note, which was pledged to secure a promissory (hand) note dated "January 19, 1977", but again, the only hand note introduced at trial was dated "January 20, 1977." Because the evidence clearly shows that the date discrepancy was the result of a mutual mistake in the guaranty instrument and in the pledge instrument, we affirm the judgment in favor of the lender, but amend as to the amount of that judgment.

FACTS
In January of 1977 the Baker Bank and Trust Co., now First State Bank and Trust Co., ("the Bank") made a $350,000.00 SBA-guaranteed loan to Quality Building Supply of Denham Springs, Inc. ("Quality Building Supply"). The loan was closed on January 19, 1977, at an attorney's office in Denham Springs, Louisiana. There, the president of Quality Building Supply, Samuel Davidson, and his wife, Bessie Davidson, signed an "SBA Guaranty" for the payment of the loan. In addition, Quality Building Supply, acting through Davidson, executed a collateral mortgage on property owned by the company and a collateral mortgage note.[1] A promissory note ("the hand note") was executed the next day, on January 20, 1977, at the Bank's office in Baker, Louisiana.[2],[3]
*284 The following year, on October 2, 1978, Quality Building Supply sold its assets, including the mortgaged property, to defendant Seven Gables, Inc. ("Seven Gables"). As part of the consideration for the sale, Seven Gables assumed the payment of the balance due on the collateral mortgage note, and assumed all of the obligations imposed on Quality Building Supply in that note and in the collateral mortgage.
The Bank filed the present lawsuit on March 26, 1981 against the Davidsons and Seven Gables after the loan payments became delinquent. Trial on the merits was held on September 17, 1984 and November 14, 1984. A judgment was signed by the trial judge on January 15, 1985, recognizing the collateral mortgage, and awarding the Bank $427,295.32 plus legal interest, all additional court costs, attorney's fees of 25% of the principal and interest, and future interest against all three defendants, in solido. The Davidsons and Seven Gables appealed, assigning a number of errors.

LIABILITY OF THE DAVIDSONS ON THE SBA GUARANTY
The Davidsons' contentions can be summarized as follows. First, they may not be held liable for the debt because the debt was not proven. They guaranteed payment of a note (hand note) dated "1-19-77" and the only note introduced by the Bank was dated "January 20, 1977." As contracts of suretyship must be in writing, strictly construed, and may not be varied by parol evidence, the Bank failed to sustain its burden of proof. The majority of the Davidsons' sixteen assignments of error rest upon this contention and are disposed of by our treatment of the guaranty. Second, Bessie Davidson contends that she was incompetent to enter into the SBA guaranty when she signed it and is therefore not bound by it. Third, the Davidsons contend that the trial court's judgment erroneously awards interest upon interest, in violation of former Louisiana Civil Code article 2001, awards excessive attorney's fees, and fails to recognize a certain stipulation by the Bank's counsel in the Davidsons' favor. We find the remaining assignments of error to be without merit.

1. Proof of the Debt
On January 19, 1977, in connection with the $350,000.00 loan from the Bank to Quality Building Supply, Sam Davidson and Bessie Davidson signed an SBA guaranty. This guaranty stated, in part:
In order to induce Baker Bank & Trust Co. and S.B.A. (hereinafter called "Lender") to make a loan or loans, or renewal or extension thereof, to Quality Building Supply of Denham Springs, Inc., (hereinafter called the "Debtor"), the Undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor, made by the Debtor to Lender, dated 1-19-77 in the principal amount of $350,000.00, with interest at the rate of 10% per cent per annum. Such note, and the interest thereon and all other sums payable with respect thereto are hereinafter collectively called "Liabilities."
The Davidsons waived all notice, presentment, demand and notice of dishonor. They agreed to pay the amount due as if such amount constituted their "direct and primary obligation."
At trial the Bank introduced the hand note as the note referred to in the SBA guaranty. The hand note conformed to the description in the SBA Guaranty in all respects, except that it was dated "January 20, 1977" rather than "1-19-77."
The Davidsons essentially make three arguments to prevent the introduction of extrinsic *285 evidence to show that they guaranteed payment of the hand note. The first argument is based on the writing requirement, the second on the rule of strict construction, and the third on the parol evidence rule.
As the Davidsons correctly note, a contract of suretyship must be in writing to be provable. Boyle v. Fringe Facts, Inc., 414 So.2d 1333, 1338 (La.App. 2d Cir.1982); Boro Indus., Inc. v. James J. Culotta, Inc., 336 So.2d 878, 880 (La.App. 4th Cir.), writ refused, 339 So.2d 24 (La.1976). In addition, suretyship cannot be presumed. An agreement to become a surety must be expressed, and must be construed within the limits intended by the parties to the agreement. See LSA-C.C. art. 3039. Finally, parol evidence may not be admitted to prove "any promise to pay the debt of a third person," under former Code article 2278(3), and may not be admitted "against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since," under former Code article 2276.[4] Though correct statements of the law, these propositions do not prohibit the evidence introduced by the Bank.
The SBA guaranty was written, its terms were explicit, and it was signed by the Davidsons. The writing requirement was satisfied. The evidence offered by the Bank was not offered to broadly construe the guaranty, or to prove the promise, or to vary the terms of the guaranty. To the contrary, the evidence showed that the contract of guaranty, as reduced to writing, did not accurately reflect the true agreement and intent of the parties, and should therefore be reformed or corrected. As such, the strict construction rule and the parol evidence rule are inapplicable.
A written instrument may be reformed against the original parties and their privies to correct an error or mistake in the contract, so as to make it accurately express the true intent and agreement of the parties. See Daigle & Assocs., Inc. v. Coleman, 396 So.2d 1270, 1271 (La.1981); Reynaud v. Bullock, 195 La. 86, 196 So. 29, 34 (1940); Fontenot v. Lewis, 215 So.2d 161, 163 (La.App. 3d Cir.1968); Walker v. Jim Austin Motor Co., 162 So.2d 135, 138 (La.App. 1st Cir.), writ refused, 246 La. 354, 164 So.2d 353 (1964); Comment, Reformation of Instruments in Louisiana, 30 Tul.L.Rev. 486, 495 (1956). The error or mistake must be mutual. Reynaud v. Bullock, 196 So. at 34. Before an instrument will be reformed, there must be clear proof of the antecedent agreement as well as the error in committing it to writing. Ker v. Evershed, 41 La.Ann. 15, 18, 6 So. 566 (1889); Price v. Taylor, 139 So.2d 230, 234 (La.App. 1st Cir.1962). The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence. See Agurs v. Holt, 232 La. 1026, 95 So.2d 644, 645 (1957); Reynaud v. Bullock, 196 So. at 34; Walker v. Jim Austin Motor Co., 162 So.2d at 138. The parol evidence is not offered to vary the terms of the written instrument but rather to show that the writing does not express the true intent or agreement of the parties. Valhi, Inc. v. Zapata Corp., 365 So.2d 867, 870 (La.App. 4th Cir.1978). As one commentator has noted: "Because mistake in expressing the terms of a written transaction is so common, it would be intolerable to refuse correction of the writing." Comment, Parol Evidence in Louisiana, 47 Tul.L.Rev. 381, 386 (1973).
The evidence presented at trial is clear and convincing that the Davidsons and the Bank agreed and intended that the Davidsons would guarantee payment of the hand note. The discrepancy contained in the SBA guaranty, in referring to a note dated January 19, 1977 rather than January 20, 1977, was clearly a mutual mistake. Davidson admitted that there was only one *286 $350,000.00 loan made by the Bank to Quality Building Supply. The Bank presented the hand note as the note sued upon and guaranteed. The Davidsons presented no evidence whatsoever of any other hand note dated January 19, 1977. The Davidsons guaranteed the payment of a note of Quality Building Supply "dated 1-19-77 in the principal amount of $350,000.00, with interest at the rate of 10% per cent per annum." The hand note, dated January 20, 1977, was "in the principal amount of $350,000", with interest "at the rate of 10% per annum." The evidence is clear and convincing that the parties intended the guaranty to apply to the hand note and that the hand note date in the SBA Guaranty was the result of a mutual mistake. As such, this assignment of error is without merit.

2. Incapacity of Bessie Davidson
Bessie Davidson contends that the SBA Guaranty may not be enforced against her because she was mentally incompetent when she signed it. The law pertaining to proof of incapacity to contract was set out in Meadors v. Pacific Int'l Petroleum, Inc., 449 So.2d 26, 28 (La.App. 1st Cir.), writ denied, 450 So.2d 964 (La.1984):
It is necessary to the validity of a contract that the parties be legally capable of contracting. La.C.C. art. 1779. In the absence of a special exception the presumption is that all persons possess the capacity to contract. La.C.C. art. 1782; First National Bank of Shreveport v. Williams, 346 So.2d 257 (La.App. 3rd Cir.1977). La.C.C. art. 1788 recognizes insanity as evidenced by a judgment of interdiction, as one exception to the presumption. That exception is not applicable here. Another is recognized by La.C.C. art. 1789 which provides that `A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent'. The plaintiff must prove that the mental incapacity existed at the time of the contract. See Emerson v. Shirley, 188 La. 196, 175 So. 909 (1937); Kleiner v. Ciko, 417 So.2d 54 (La.App. 1st Cir.1982), writ denied, 420 So.2d 457 (1982).
The exceptions to the presumption of capacity to contract must be shown quite convincingly and by the great weight of the evidence. `Where doubt exists as to the showing of an exception, the presumed capacity to contract prevails.' First National Bank of Shreveport, 346 So.2d at 264.
Mrs. Davidson has never been interdicted. As such, she had the burden of proving that her mental incapacity existed when she signed the contract and that her incapacity was apparent. She proved neither. Although she testified that, at the time she signed the guaranty, she was under a "terrific strain" and had drug and alcohol-related problems, she was able to handle her business affairs, and had a clear recollection of the events surrounding the guaranty. Although she testified that she voluntarily committed herself to the Southeast Louisiana Hospital in Mandeville for two weeks in June of 1977, some four months after signing the guaranty, there was no testimony whatsoever that her incapacity, if any, was or should have been apparent when she signed the guaranty. This assignment of error is without merit.

3. Amendment of the Judgment
The Davidsons also contend that the judgment of the trial court is erroneous in three respects. First, they allege, it awards interest on interest, in violation of Civil Code article 2001. Second, it awards excessive, and in part duplicative, attorney's fees. Third, it fails to recognize a stipulation by the Bank's counsel in the Davidsons' favor.

Interest
The judgment awarded the Bank $427,295.32, which represented the principal ($265,540.97) and 10% interest through September 17, 1984 ($133,046.02) on the hand note; court costs, legal fees, insurance, and taxes ($5,636.02); and payments *287 made by the Bank to the first mortgage holder on the mortgaged property ($23,072.31). It also awarded "future interest [on the hand note] as stated herein," together with "interest at the highest lawful rate from date of this judgment until paid, plus all additional court costs, attorney's fees of twenty-five (25%) percent of the principal and interest." The Bank is not entitled to both future interest on the note and legal interest on this amount. LSA-C.C. art. 2001.
In a suit to recover amounts due on a promissory note, the rate of interest stipulated in the note, rather than the rate of legal interest provided in LSA-C.C. art. 2924(B),[5] is the rate to be applied to the judgment rendered. Bank of New Orleans v. H.P.B., Jr. Dev. Co., 439 So.2d 1269, 1270 (La.App. 5th Cir.1983); Meyer v. Consolidated Mktg., Inc., 376 So.2d 1278, 1280 (La.App. 2d Cir.1979); Fontenot v. Lafleur, 341 So.2d 62, 67 (La.App. 3d Cir. 1976), writ denied, 343 So.2d 202 (La.1977). The bank is entitled to the principal (the balance due), accrued interest to the date of judicial demand, and 10% interest on the principal from the date of judicial demand. The judgment already provides for the principal, and interest through September 17, 1984. We will amend the judgment to provide for 10% interest per annum on the principal, as stipulated in the hand note and collateral mortgage note, from September 17, 1984 until paid.

Attorney's Fees
The hand note, which the Davidsons guaranteed, provided for the payment of "reasonable attorney's fees and costs" which the Bank incurred in connection with the satisfaction of the debt. The trial court, without giving supporting reasons, awarded 25% of the principal and interest due as attorney's fees, in addition to an unsegregated amount for legal fees in a $5,636.01 lump sum for "court costs, legal fees, insurance and taxes." In making awards for attorney's fees, the trial court is given considerable discretion, and will not be interfered with except in a case of clear abuse. State Dep't of Highways v. Terrebonne, 349 So.2d 936, 940 (La.App. 1st Cir.), writ refused, 351 So.2d 166 (La. 1977).
There are a number of factors to be considered in determining reasonable attorney's fees, including the number of hours spent by the attorney. Other factors are: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount involved; (5) the extent and character of the labor performed; (6) the legal knowledge, attainment, and skill of the attorney; (7) the number of appearances made; (8) the intricacies of the facts and law involved; (9) the diligence and skill of counsel; (10) the court's own knowledge; and (11) the ability of the party liable to pay. Guillory v. Guillory, 339 So.2d 529, 531 (La.App. 4th Cir.1976). With these factors in mind, we have made a detailed and thorough search of the record. Especially in view of the sizable amount of the judgment, we find that, in addition to any amount awarded in the lump sum, 15% of the principal and interest is the highest amount that could have been awarded in this case without constituting a clear abuse of the trial court's considerable discretion. Accordingly, we will amend the judgment of the trial *288 court to provide for attorney's fees in the amount of 15% of the principal and interest awarded ($398,506.99) on the hand note, in addition to any amount previously awarded by the trial court as part of the lump sum.

Stipulation
Counsel for the Bank stipulated at trial that the claim of $23,072.31 for payments to the first mortgage holder was asserted "only against Seven Gables, Inc., and not the guarantors, Bessie Davidson and Sam Davidson, and also the insurance." The amount of the insurance was not brought out at trial. However, the trial court erroneously entered judgment against the Davidsons for the amount of the mortgage payments. LSA-C.C. former art. 2291; R.J. d'Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600, 601 (La. 1983). The judgment will be amended accordingly.

LIABILITY OF SEVEN GABLES ON THE ASSUMPTION AGREEMENT
Seven Gables' contentions can be summarized as follows. First, it may not be held liable for payment of the debt because the debt was not proven. It assumed a collateral mortgage and a collateral mortgage note. The collateral mortgage note, by the terms of the act of pledge on its back, was pledged to secure the payment of a promissory (hand) note dated "January 19, 1977" and the only promissory note introduced by the Bank was dated "January 20, 1977." As agreements to assume the obligation of another must be in writing, strictly construed, and may not be varied by parol evidence, the Bank failed to sustain its burden of proof. Second, Seven Gables contends that even if the debt was proven, it assumed only in rem, rather than personal liability. In addition to these contentions, we will address two errors in the judgment concerning the award of interest and attorney's fees. We find the remaining assignments of error to be without merit.

1. Proof of the Debt
On October 2, 1978, Seven Gables purchased the assets of Quality Building Supply, including the real property which secured the collateral mortgage in favor of the Bank. In connection with the sale, Quality Building Supply and Seven Gables executed a document entitled "Sale With Mortgage, Assumption of Mortgages, and Assignment of Accounts Receivable." The sale price was $1,290,000.00; Seven Gables provided a promissory note for $485,035.07. For the balance of the sale price, Seven Gables assumed a number of obligations of Quality Building Supply, including all of the obligations imposed on Quality Building Supply in the collateral mortgage note and collateral mortgage. The collateral mortgage note was, according to the act of pledge on its reverse side, pledged to secure the payment of
One certain promissory note dated January 19, 1977, in the amount of $350,000.00 to the order of Baker Bank and Trust Company, bearing interest at ten (10%) per annum from date, in 84 installments of principal and interest of $5,859.00 each payable monthly commencing February 19, 1977.
At trial, the Bank introduced the hand note as the evidence of the obligation imposed on Quality Building Supply in the collateral mortgage note and collateral mortgage, and later assumed by Seven Gables. The hand note conformed to the description in the act of pledge except that it was dated "January 20, 1977" rather than "January 19, 1977."
Seven Gables essentially makes three arguments, similar to those made by the Davidsons, to prevent the introduction of extrinsic evidence to show that they assumed the obligation of Quality Building Supply evidenced by the hand note. The first argument is based on the writing requirement, the second on the rule of strict construction, and the third on the parol evidence rule.
As Seven Gables correctly notes, the assumption of the obligation of another must be in writing to be enforceable by the obligee *289 against a third person. See LSA-C.C. art. 1821 and comments thereunder. See also Fontenot v. Marquette Cas. Co., 258 La. 671, 247 So.2d 572, 579 (1971). It is also well-settled in Louisiana that a security device, such as a collateral mortgage note, should be strictly construed. See Durham v. First Guar. Bank of Hammond, 331 So.2d 563, 565 (La.App. 1st Cir.), writ refused, 334 So.2d 431 (La.1976). Finally, as mentioned above, parol evidence generally may not be admitted against or beyond what is contained in a written act; that is, it may not be admitted to alter the terms of a written instrument. LSA-C.C. former art. 2276. However, these propositions do not prohibit the evidence introduced by the Bank.
The assumption agreement was written, its terms were explicit, and it was signed by the authorized agent of Seven Gables. The writing requirement was satisfied. There is no allegation that the act of pledge, contained in the collateral mortgage note, is ambiguous; instead the Bank offered evidence to show that the act of pledge, as reduced to writing, did not accurately reflect the true agreement and intent of the parties to the act of pledge and should be reformed or corrected. As such, the rule of strict construction and the parol evidence rule are inapplicable.
As we have mentioned earlier, a written instrument may be reformed or corrected against the original parties and their privies to correct an error or mistake in the contract, so as to make it accurately express the true intent and agreement of the parties. See Daigle & Assocs., Inc. v. Coleman, 396 So.2d at 1271; Reynaud v. Bullock, 196 So. at 34; Fontenot v. Lewis, 215 So.2d at 163; Walker v. Jim Austin Motor Co., 162 So.2d at 138. A privy to a written instrument is one who has succeeded to some right or obligation which one of the parties to the instrument derived through the written instrument or incurred under it. Commercial Germania Trust & Sav. Bank v. White, 145 La. 54, 59, 81 So. 753 (1919). However, an instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument, or who have relied on the public records. See Reynaud v. Bullock, 196 So. at 34; Waller v. Colvin, 151 La. 765, 772, 92 So. 328 (1922); Comment, Parol Evidence in Louisiana, 47 Tul.L.Rev. 381, 386 (1973); 76 C.J.S. Reformation of Instruments § 54, at 405-06 (1952). The act of pledge may be reformed or corrected against Seven Gables, the successor to the Quality Building Supply's obligation, because it is a privy to the act of pledge of the collateral mortgage note. In any event, there is no evidence that Seven Gables relied upon the erroneous date or would be prejudiced by its correction.
Before a written instrument will be reformed or corrected, it must be shown that the error or mistake was mutual. Reynaud v. Bullock, 196 So. at 34. There must also be clear proof of the antecedent agreement as well as the error in committing it to writing. Ker v. Evershed, 41 La.Ann. at 18; Price v. Taylor, 139 So.2d at 234. The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence. See Agurs v. Holt, 95 So.2d at 645; Reynaud v. Bullock, 196 So. at 34; Walker v. Jim Austin Motor Co., 162 So.2d at 138. The parol evidence is offered, not to vary the terms of the written instrument, but rather, to show that the writing does not express the true intent or agreement of the parties. Valhi, Inc. v. Zapata Corp., 365 So.2d at 870.
In addition, there must be some evidence of connection between a pledged collateral mortgage note and the hand note. See Durham v. First Guar. Bank of Hammond, 331 So.2d at 565. The accepted method of connecting the hand note to the security of the collateral mortgage, which was not followed in this case, is to designate on the face of the hand note that it is secured by the pledge of the collateral mortgage note. Id.
The evidence presented at trial is clear and convincing that Seven Gables and Quality Building Supply agreed and intended that Seven Gables would assume Quality *290 Building Supply's obligation in the collateral mortgage note and collateral mortgage. This obligation was to pay the balance due on the loan plus interest, as well as necessary costs and attorney's fees, and was evidenced by the hand note. The evidence is also clear and convincing that the original parties to the loan, the Bank and Quality Building Supply, intended the collateral mortgage note to secure the obligation evidenced by the hand note, and that the date discrepancy was the result of a mutual mistake. It is undisputed that there was only one $350,000.00 loan to Quality Building Supply. The Bank presented the hand note as the evidence of the assumed obligation. There was no evidence presented by Seven Gables that any alternate promissory note dated January 19, 1977 was ever executed. The references in the act of pledge concerning the principal amount, the payee, the interest rate, and the installments conform to the terms of the hand note and, despite the one-day date discrepancy, clearly prove the connection.
As such, it is clear that Seven Gables assumed the obligation of Quality Building Supply, which was evidenced by the hand note and secured by the pledge of the collateral mortgage note and by the collateral mortgage; the act of pledge will be reformed accordingly. This assignment of error is therefore without merit.

2. Personal Liability
As one of the conditions of the sale of Quality Building Supply's assets, Seven Gables specifically assumed, and agreed to hold Quality Building Supply harmless from, the payment of the balance due on the collateral mortgage note, which was paraphed ne varietur with the collateral mortgage on the three pieces of property Seven Gables bought. The "Sale With Mortgage" document made clear that "the BUYER herein [Seven Gables] [was] assuming all of the obligations imposed on the SELLER [Quality Building Supply] in the said note and mortgage."
It is well-settled in Louisiana, as in other jurisdictions, that a person who assumes a mortgage becomes personally obligated and a co-debtor on the obligation secured by the mortgage. See Federal Land Bank of New Orleans v. Cook, 179 La. 857, 155 So. 249, 250 (1934); Simon v. McMeel, 167 La. 243, 119 So. 35, 37 (1928); Southern Sav. Ass'n v. Lorac, Inc., 490 So.2d 1104, 1106 (La.App. 4th Cir.1986); Wood v. LaFleur, 408 So.2d 37, 39 (La. App. 3d Cir.1981); 59 C.J.S. Mortgages § 418, at p. 615 (1949). To the contrary, one who purchases property subject to a mortgage incurs no personal liability. See Balfour v. Chew, 4 Mart. (n.s.) 154, 165 (1826); HEP Dev. Corp. v. Mouton, 256 So.2d 744, 745 (La.App. 1st Cir.), writ refused, 260 La. 1126, 258 So.2d 377 (1972).
Seven Gables contends, relying upon Kaplan v. University Lake Corp., 381 So.2d 385 (La.1979), on reh'g, 381 So.2d 389 (La.1980), that one who purchases property which secures a collateral mortgage, and who assumes all obligations in a collateral mortgage and collateral mortgage note, assumes only an in rem obligation, that is, an obligation only up to the value of the property.
In Kaplan, the defendant purchased a piece of property, which had previously secured a collateral mortgage, and assumed and obligated itself to pay all mortgages then "extant", that is, to pay all mortgages existing at the time it purchased the property. The Supreme Court held that there were no mortgages extant at the time the defendant purchased the property because the collateral mortgage note had prescribed, thereby extinguishing the mortgage. Because the defendant had not personally undertaken the payment of the hand note, which the collateral mortgage note was pledged to secure, the defendant was not obligated to pay the debt.
Kaplan is simply inapplicable to this case. Here, it is undisputed that there was an existing and valid collateral mortgage and $350,000.00 collateral mortgage note at the time Seven Gables purchased the property from Quality Building Supply. The collateral mortgage note, of course, was pledged to secure the $350,000.00 obligation *291 of Quality Building Supply to the Bank. Seven Gables assumed and agreed to hold Quality Building Supply harmless from the payment of the balance due on the collateral mortgage note, and specifically assumed "all of the obligations imposed on" Quality Building Supply in the collateral mortgage note and collateral mortgage. As the collateral mortgage was recorded before the sale, Seven Gables would have been liable in rem, up to the value of the property, even had it made no agreement at all with Quality Building Supply. Under Seven Gables' interpretation, which we decline to follow, its assumption was wholly unnecessary. Seven Gables assumed the obligations as a substantial part of the consideration for the purchase of Quality Building Supply's assets. The language of the assumption, as well as the evidence presented at trial, provides clear and convincing proof that both parties to the sale intended that Seven Gables would undertake the payment of the entire balance due on the loan. This assignment of error is therefore without merit.

3. Amendment of the Judgment
As previously mentioned in our discussion of the Davidsons' liability, the trial court erred in awarding legal interest in addition to future interest on the hand note. See LSA-C.C. art. 2001. In addition, as stated above, we find that the Bank is entitled to reasonable attorney's fees in the amount of 15% of the amount awarded for principal, interest, and first mortgage payments, in addition to the amount awarded in the lump sum.

ORDER
For the foregoing reasons, we amend the judgment of the trial court and render judgment as follows:
It is ordered that there be judgment rendered in favor of the plaintiff, First State Bank and Trust Company of East Baton Rouge Parish, and against the defendants, Seven Gables, Inc., H. Samuel Davidson and Bessie Mae Davidson Saucier, in solido, for four hundred four thousand two hundred twenty-three and 01/100 dollars ($404,223.01); plus 10% interest per annum on the principal amount of two hundred sixty-five thousand five hundred forty and 97/100 dollars ($265,540.97) from September 17, 1984 until paid; plus attorney's fees in the amount of 15% of principal and interest.
It is further ordered that there be judgment rendered in favor of the plaintiff, First State Bank and Trust Company of East Baton Rouge Parish, and against defendants, Seven Gables, Inc., H. Samuel Davidson and Bessie Mae Davidson Saucier, in solido, for five thousand six hundred thirty-six and 02/100 dollars ($5,636.02) with legal interest from the date of judgment until paid.
It is further ordered that there be judgment rendered in favor of the plaintiff, First State Bank and Trust Company of East Baton Rouge Parish, and against defendant Seven Gables, Inc. for twenty-three thousand seventy-two and 31/100 dollars ($23,072.31) plus 10% interest per annum on this amount from September 17, 1984 until paid. It is further ordered that plaintiff's mortgage is recognized on the real property described in the judgment of the trial court. The defendants are cast for all costs at trial and on appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
EDWARDS, J., concurs in the result.
NOTES
[1] In addition to the collateral mortgage package and the SBA guaranty, two collateral chattel mortgages and collateral chattel mortgage notes were executed in favor of the Bank by Quality Building Supply, on or about January 19, 1977. Although the Bank alleged that these instruments secured the loan, the trial court judgment did not recognize their validity. As the Bank neither appealed nor answered the appeal they are precluded from asserting the validity of these instruments.
[2] The hand note was executed on an SBA Form. A second promissory note (hand note) was executed at the Bank on this date, in connection with the $350,000.00 loan to Quality Building Supply. The second note was apparently executed only for the Bank's records and is not being sued upon.
[3] The mechanics for creating a collateral mortgage are described in Nathan & Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, 497-502 (1973). The first step is for the mortgagor (here Quality Building Supply) to execute an act of collateral mortgage. In conjunction with the act of collateral mortgage, the mortgagor executes a promissory note (the collateral mortgage note or ne varietur note), which is then paraphed ne varietur for identification with the act of collateral mortgage. Next, the mortgagor pledges the collateral mortgage note and the act of collateral mortgage itself to the creditor (here the Bank) to secure a debt. (The debt may be pre-existing, created contemporaneously with the mortgage, or created in the future.) This debt is evidenced by a promissory note, or hand note. The hand note generally contains language to indicate that it is secured by the pledge of the collateral mortgage note.
[4] Titles III and IV of Book III of the Civil Code of 1807, which formerly contained articles 1756 to 2291, were amended and reenacted by Acts 1984, No. 331, § 1, to contain articles 1756 to 2057, effective January 1, 1985. Because the relevant facts of this case occurred before the amendments took effect, we decided it under the prior law.
[5] LSA-C.C. art. 2924 provides in part:

ART. 2924. Rates of legal and conventional interest, usury
A. Interest is either legal or conventional.
B. (1) Legal interest is fixed at the following rates, to wit:
(a) At twelve percent per annum on all sums which are the object of a judicial demand, whence this is called judicial interest; and
(b) On sums discounted at banks at the rate established by their charters.
The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:
(a) Prior to September 12, 1980, the rate shall be seven percent per annum.
(b) On and after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum.
(c) On and after September 11, 1981, the rate shall be twelve percent per annum.