LANIER, Judge.
This suit commenced as a petitory action by the widow of a seller of immovable property against the original and subsequent purchasers of the property. The widow-plaintiff contended the act of sale correctly recited it only conveyed two lots to the original purchaser, it was not intended that a third lot be conveyed, and her affidavit attached to an act of correction which stated the third lot was intended to be conveyed in the act of sale was secured by fraud, threats and intimidation. The original purchaser answered and asserted it was the intention of the parties to the sale that all three lots would be conveyed; when the error in the description was discovered the widow-plaintiff executed an affidavit declaring that to be the intention of her husband; this affidavit was the basis for an act of correction of the act of sale; and, thereafter, the original purchaser sold the property to a subsequent purchaser. The original purchaser reconvened against the widow-plaintiff for reformation of the original act of sale to include the omitted lot and sought damages of $110,000 from the widow-plaintiff for filing a “frivolous law suit which is defamatory” and caused “anxiety, embarrassment, and expense.” The subsequent purchaser answered asserting it validly acquired ownership of all three lots, reconvened against the widow-plaintiff for reformation of the original act of sale and third partied the original purchaser for indemnification under the warranty provisions of the subsequent sale. After a trial, the district court found as a fact that the parties to the original sale intended to convey all three lots. Judgment was rendered which (1) dismissed the petitory action of the widow-plaintiff, (2) reformed the description of the original sale as requested in the reconventional demands of the original and subsequent purchasers and (3) dismissed the claim for damages of the original purchaser and the third party demand of the subsequent purchaser. The widow-plaintiff took this de-volutive appeal.
FACTS
Dr. John J. Hallaron, deceased husband of plaintiff, acquired lots 2A, 2B and 2C of East Expressway Shopping Center in St. *924 Tammany Parish, Louisiana, from the G. Brian Corporation on December 7, 1962, in two acts of sale, one for lots 2A and 2C and one for lot 2B. On or about February 2, 1970, Dr. Hallaron executed an agreement to sell “all of lot 2, East Expressway Shopping Center” to Pinewood Shopping Mall, Inc. (Pinewood). On February 12, 1970, an act of sale (the deed) was prepared by and passed before a notary public in which Dr. Hallaron sold lots 2A and 2C to Pinewood. Lot 2B was omitted from this written act of sale.
Dr. Hallaron died on November 26, 1973. His succession was opened in the Parish of Orleans. Lot 2B was not listed in either the descriptive list or the judgment of possession. The plaintiff (Mrs. Hallaron) was adjudged his sole heir.
In 1984, Pinewood found a prospective buyer for lots 2A, 2B and 2C. However, a title examination revealed that the deed from Dr. Hallaron did not include lot 2B. In order to cure the title to lot 2B, Pinewood had a notary prepare an affidavit to be executed by Mrs. Hallaron, stating in pertinent part that she “concurs in the amendment of the title to Pinewood Mall Shopping Center, Inc. to include Lot 2B as above described; further and finally, for the cash consideration expressed in the sale before Lee C. Grevemberg, Notary Public, dated February 12, 1970; hereinabove referred to, and so as to cure the title, she transfers all of her rights, titles and interests which she has, or may have had, in Lots 2A, 2B and 2C more particularly described above.” Mrs. Hallaron signed this affidavit on August 22, 1984. This affidavit was attached to an act of correction of the deed from Dr. Hallaron, and both documents were recorded in the conveyance records of St. Tammany Parish. Pinewood then executed an act of sale conveying lots 2A, 2B and 2C to the Eastway Group (East-way) on August 23, 1984. This act of sale was also recorded in the conveyance records of St. Tammany Parish.
On September 28, 1984, Mrs. Hallaron filed this suit.
USE OF PAROL EVIDENCE TO SHOW THE INTENT OF A DECEASED PERSON TO PROVE MUTUAL ERROR OR MISTAKE
Mrs. Hallaron contends that “the Trial Court erred as a matter of law, by permitting parol testimony to reform a deed executed more than 15 years prior to trial by a vendor, who was deceased more than 10 years prior to trial. Such judicial reformation necessitates supplying intent to convey by the late Dr. Hallaron in violation of both the parol evidence rule and the ‘Dead Man Statute’ ”.
There is direct and circumstantial evidence of record to show the act of sale mistakenly omitted the description of lot 2B. The agreement to sell executed by the parties refers to “all of Lot 2, East Expressway Shopping Center.” After the act of sale, Pinewood paid the taxes on all three lots, and Dr. Hallaron did not. Lot 2B was not included in Dr. Hallaron’s succession. Charles E. Silva, Sr., Pinewood’s treasurer, testified he was familiar with the act of sale when Pinewood obtained ownership and that Pinewood intended to purchase lots 2A, 2B and 2C. The notary on the sale, Lee C. Grevemberg, testified it was his intention in drafting the sale that lots 2A, 2B and 2C be conveyed. The sale was part of a shopping center development, and, without lot 2B, there would be no access between lots 2A and 2C. Mrs. Hal-laron testified she did not know what her husband’s intent was. The issue raised by the appellant about Dr. Hallaron’s intent concerns testimony by the realtor and notary involved in the sale.
During the testimony of the realtor, John A. Eason, the following occurred:
Q And what was your connection with that transaction?
A At that time I was working to consolidate the properties to work in behalf of some of the individuals to see if something couldn’t be salvaged out of this. It was a very sore, unpleasant situation at the time where everybody was either trying to sell or do anything they could with the property. I was trying to assemble it. I see in this particular transaction I charged no *925 commission. I represented Mr. Warren Gardner, Mr. Alba, Mr. Silva, was in constant contact with all of the property owners in this total tract of ground.
At the time, Mr. Hallaron was very ill, had a very unpleasant feeling about the property, wanted just to get rid of all of it. I did negotiate this document.
Q I notice at the top of it it says ‘all of lot two.’ What was meant by all of lot two?
MR. WEDIG:
I have to object, Your Honor.
MR. DEANO:
If Your Honor please, the law does allow parol evidence to back up a written contract.
THE COURT:
Go ahead.
EXAMINATION BY MR. DEANO:
Q Would you explain to the Court what is meant by lot two, all of lot two?
A That is everything designated with a two on it in that transaction on that parcel of property which was composed of the East Expressway Shopping Center, that total tract of ground. Mr. Hallaron was familiar he was selling all of it. He was very grateful at the time that he did. Mrs. Hallaron was also aware that the transaction was done. It was one thing less that they had to be concerned with.
During the testimony of Mr. Grevemberg, the following occurred:
Q And where did you get the description of the property?
A Mr. Deano, let me explain that Pinewood Mall Shopping Center, Inc., was a corporation formed by a group of people trying to resurrect what Sam Reeile, G. Brian Corporation was trying to put as a major shopping center. Mr. Eason was a young realtor and I was a young lawyer back when this happened, but Mr. Eason was trying to salvage for the benefit of adjoining property owners enough of these lots to create a strip shopping center that was to be known as Pinewood Mall. Mr. Eason brought to me a contract whereby Pinewood Mall Shopping Center, Inc., would buy all of lot two, which I felt and still do, was all of Dr. Hallaron’s property in that particular subdivision. I was brought I thought originally just one sale from G. Brian Corporation to Dr. Hallaron. I, subsequently, found out that on the same day G. Brian Corporation, because of some goofy thing that G. Brian Corporation did, actually would pass the sale on lots 2-A and 2-C in this case, and then 2-B immediately behind it as a separate instrument. It’s possible that I was brought both of those transactions. My act reflected what I thought was in all of Dr. Hallaron’s interests and all of lot two, which really should have been lots 2-A, ‘B’ and ‘C’. Had I been aware and, perhaps, I just made an error, and maybe I was brought two acts, and I might have overlooked the act of 2-B, which there is no doubt in my mind that what Dr. Hallaron wanted to convey was—
MR. WEDIG:
I would have to object—
THE WITNESS: .
Well, he told me what he wanted to convey.
MR. WEDIG:
The dead man’s statute doesn’t let us put words in a dead man’s mouth.
THE COURT:
Subject to your objection. Go ahead.
THE WITNESS:
Dr. Hallaron was ill at the time as evidenced by his signature. He came to my office with his wife to pass the act of sale and at the time he expressed his extreme relief that he was divesting himself of all of his property in that particular Elmwood [sic] Shopping Center.
*926 MR. WEDIG:
Again, Your Honor, I have to make the same objection.
THE COURT:
.Make it general. Subject to your objection, go ahead.

Parol Evidence Rule

The appellant cites La.C.C. arts. 1835, 1848, 2046 and 2053[1] as authority that parol evidence is not admissible herein. These authorities are not controlling. It is well settled that, as between the parties to a written instrument, parol evidence is admissible to show mistake. Scafidi v. Johnson, 420 So.2d 1113 (La.1982). It is also well settled that parol evidence may be introduced to reform a written instrument to correct an error or mistake. In First State Bank & Trust Company of East Baton Rouge Parish v. Seven Gables, Inc., 501 So.2d 280 (La.App. 1st Cir.1986), appears the following:
A written instrument may be reformed against the original parties and their privies to correct an error or mistake in the contract, so as to make it accurately express the true intent and agreement of the parties.... The error or mistake must be mutual_ Before an instrument will be reformed, there must be clear proof of the antecedent agreement as well as the error in committing it to writing. ... The burden is on the one seeking reformation to prove the error alleged by clear and convincing evidence. ... The parol evidence is not offered to vary the terms of the written instrument but rather to show that the writing does not express the true intent or agreement of the parties.... As one commentator has noted: ‘Because mistake in expressing the terms of a written transaction is so common, it would be intolerable to refuse correction of the writing.’
This portion of the assignment of error is without merit.

Dead Man’s Statute

The dead man’s statute, La.R.S. 13:3721, provides as follows:'
Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder. [Emphasis added.]
The instant case is very similar to Cordova v. Cordova, 382 So.2d 1050, 1051-1052 (La.App. 2nd Cir.1980), wherein our learned brothers in the Second Circuit observed as follows:
In July 1977, the widow of Frank Cor-dova, and administratrix of his succession, sued the widow of G.C. Cordova, individually and as administratrix of his *927 succession, to annul and set aside a cash sale deed dated October 21, 1975 by which Frank Cordova conveyed to G.C. Cordova a tract of land for the stated consideration of $7,000 and other good and valuable consideration. Plaintiff alleged no consideration was ever paid and that there was mutual error in that neither seller nor buyer contemplated the completion of the sale without payment of the price.
At trial, over defendant’s objection, the trial court allowed parol evidence to establish the facts alleged by plaintiff. The evidence clearly established that although the deed, and a mortgage and a note, were signed in a lawyer’s office, and the deed was recorded in error, the sale was not completed by examination of title, securing of a bank loan, and payment of the purchase price, prior to the seller’s death one week after the papers were signed, after which the buyer decided not to go through with the sale. The buyer later died. The trial court rendered judgment annulling and setting aside the deed, and defendant appealed.
The determinative issue on appeal is whether parol evidence was admissible to establish the grounds for setting the deed aside. Appellant relies on the ‘deadman’s statute’, LSA-R.S. 13:3721, and LSA-C.C. Arts. 2236, 2276 and 2278.
The deadman’s statute, applicable to suits to recover a ‘debt or liability’ of a deceased person, is not applicable to this suit to annul and set aside a sale. [Footnotes omitted.]
The rationale of Cordova is applicable herein. This is not a suit to prove a debt or liability of a dead person. It is a suit to show that the act of sale signed by the dead person does not express the true intent or agreement of the parties thereto and to reform the deed to show the true agreement. Such does not come within the purview of the dead man’s statute.
This portion of the assignment of error is without merit.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. As stated in the Comments of the 1984 Obligations Revision, these new articles reproduce and incorporate the substance and principals of former La.C.C. arts. 2236, 2276, 1903, 1953, 1965 and 13.