STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


08-118


SUCCESSION OF RUBY GREER



**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. 06-062
HONORABLE PATRICIA COLE, PRESIDING
**********


SYLVIA R. COOKS
JUDGE


**********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion and James T. Genovese, Judges.

AFFIRMED.

Rudie R. Soileau, Jr.
717 Pujo Street
Lake Charles, LA 70601
(337) 433-0110
COUNSEL FOR APPELLEE:
    Gary Patrick Greer

Karl W. Bengtson
Bengtson Law Firm, L.L.C.
122 Exchange Place
P.O. Drawer 51147
Lafayette, LA  70505-1147
(337) 291-9119
COUNSEL FOR APPELLANT:
    Michael W. Greer

**COOKS, Judge.**

In June of 2006, Ruby P. Greer passed away. Three sons survived her. At some point in 2003, Ms. Greer apparently attended a seminar concerning estate planning. This led to the preparation of a standard form entitled "Personal Data Information." This form was forwarded to John Vermillion, an attorney in Texas. Mr. Vermillion then contacted Ms. Greer to review the information on the form and discuss any relevant additional matters in order to generate the desired estate documents. On June 23, 2003, Ms. Greer executed an instrument entitled "Revocable Living Trust Agreement." The instrument was prepared by Mr. Vermillion.

The instrument created trusts in the name of each son to which Ms. Greer eventually transferred her property, assigning specific immovable tracts and other properties to the three trusts. Ms. Greer owned three tracts of immovable property, and each son was to receive one of those tracts. Mark Greer received the tract of land that included the family home, which had been Mark's residence for several years prior to Ms. Greer's death. Gary Patrick Greer received a second tract, adjacent to the tract left to Mark, upon which sat a double wide manufactured home, which at the time of her death was the residence of Ms. Greer. The third son, Michael Greer, received a third tract of land, at a site separate from the other two. That tract did not include a home. Ms. Greer also had several money certificates and annuities at the time of her passing, which were allocated among Gary Patrick and Michael. Mark did not receive any certificates or annuities.

The issue before this court concerns the mobile home which was located on the tract of land transferred to Gary Patrick. The specific provision in the trust, Article I, Section 1.3(b), which provides for the transfer of the tract to Gary Patrick, states the transfer is "to *exclude* the double wide manufactured home" located on the

property.  Gary Patrick filed a Motion for Reformation of the Trust, seeking to "correct an acknowledged clerical error that is found in one provision of the trust." Specifically, the motion sought to reform the pertinent language in Article I, Section 1.3(b) to read "to *include* the double wide manufactured home."  Mark Greer supported the motion for reformation; however, Michael Greer opposed it.

Gary Patrick obtained an affidavit from Mr. Vermillion acknowledging the error and noted that the word "exclude" should have been "include."  Mr. Vermillion reached this conclusion by reviewing notes he took while talking with Ms. Greer.  A copy of these notes were introduced in support of the motion at trial.  Gary Patrick also presented the testimony of Dwight Lankford, who reviewed and discussed the allocation of property and homes with Ms. Greer.  He testified as follows:

> Q.  So there was one tract of property, but according to your understanding of her wishes, ultimately that one tract would be divided into two tracts?
>
> A.  That's correct.
>
> Q.  And one tract would go with the red brick house that was sitting on that portion of the property?
>
> A.  Uh-huh.
>
> Q.  And the other tract would go with the mobile home that she was living in at the time?
>
> A.  That was my understanding, yes.
>
> Q.  She didn't mention anything to you and you didn't have any understanding that the trailer home was going to go in one direction, and the property where the trailer home sat was going to go in another direction?
>
> A.  No, I did not.

At the close of the trial on the matter, the trial court granted the requested reformation.  The trial court set forth the following oral reasons for judgment:

> The Court is satisfied that [Mr. Vermillion] spoke with someone

who identified herself as Ms. Greer. She knew what she was talking about concerning her property when he spoke to her on the phone. And she indicated what she wanted done with her property. At page 20, his notes say, Gary Patrick Greer will receive one half of the immovable property located at 3009 Highway 1153 and that will be comprised of ten acres, more or less, and that his portion would include the double wide manufactured home. The personal information data sheet mentioned the trailer in the abbreviated form. The second notation that Mr. Vermillion made on that personal information data sheet was that Mark would get one half of the ten ace tract to include the brick house and [Gary] Patrick to get one half of the ten acre tract to include the double wide manufactured home. And there is another notation that says one third each, but you can't tell what that notation meant. He indicated that it was his error, he is the one who told the computer - - the support who actually prepared the document that there was an error that it should have been excluded and not included. And those were his preparations based upon what Ms. Greer would have told him. The Court also sees [at Section] 4.38, if Ms. Greer had meant that it was to be the double wide mobile home she would have referred to the double wide mobile home.[1] Instead she he - - that he would - - Mike would be allowed to park a house trailer there if needed by Michael and rent free for life. In Mr. Lankford's deposition he told her to read the whole document. That she did or did not he didn't testify as to that. He just said that he told her that it was important that she read the whole document. The Court believes that it was her intent to leave the double wide trailer to [Gary Patrick] by clear and convincing evidence and orders the reformation.

Michael appeals the ordered reformation, arguing the evidence did not meet the burden of clear and convincing proof required for reformation. Michael also argues the Personal Data Information questionnaire, accompanying notes and parol evidence were improperly admitted. For the following reasons, we affirm.

## ANALYSIS

### I.   *Admissibility of Evidence and Testimony Introduced at Trial.*

Michael objects to the admissibility of the questionnaire based on two grounds.

---

[1] Section 4.38 of the Trust provides as follows:

4.38   Retain Property for Personal Use. The Trustee may retain a residence or other property for the personal use of a beneficiary and allow a beneficiary to use or occupy the retained property free of rent and maintenance expenses. Settlor expressly wishes that after her death, GARY PATRICK GREER and MARK RANDELL GREER provide MICHAEL DAVID GREER a residence or space to park a house trailer, if needed by MICHAEL DAVID GREER, rent free for life.

First he asserts that the "questionnaire and notes were copies of copies, not copies of an original document." Michael argues "without some evidence to directly identify the papers as true copies of original documents, they are inadmissible." We find no merit in this argument.

The original questionnaire was filled out by Ms. Greer, and the form was forwarded to Mr. Vermillion. The information was then reviewed by Mr. Vermillion and then, while discussing the questionnaire with Ms. Greer by telephone, he added notes to the form. Once the estate documents were completed, the client file, including the questionnaire and notes were electronically scanned and stored in that format. Mr. Vermillion testified that was the common practice of his law practice. Once questions arose after Ms. Greer's death, the client file was retrieved and paper copies of the scanned documents were made.

As Gary Patrick notes, La.Code Evid. art. 1001 allows for the type of copies admitted into evidence in this case. It provides:

> For purposes of this Chapter the following definitions are applicable:
>
> . . .
>
> (3) **Original**. An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data are stored in or copied onto a computer or similar device, including any portable or hand-held computer or electronic storage device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original".

The documents in question were authenticated by Mr. Vermillion, who had custody and control of them. The questionnaire and notes were both relevant and appropriately identified. The trial court did not err in admitting them into evidence.

Michael also alleges there was an absence of a link between Ruby Greer and the questionnaire and notes. Michael asserts that although Mr. Vermillion testified

he "spoke by phone with someone he assumed was Ruby Greer, . . . he offered no admissible factual basis to support his assumption." Thus, he argues the "papers were not . . . linked to [Ms.] Greer." We find this argument lacks merit as well. The questionnaire accurately describes Ms. Greer and her property in detail. There is sufficient circumstantial evidence to link the questionnaire to Ms. Greer.

Michael also contends the trial court erred in admitting parol evidence to vary the terms of an authentic instrument in an action brought one year after the signer's death in violation of La.R.S. 13:3721. That statute, known as the "dead man's statute," provides that an action involving a claim on a succession or the decedent's heir or legatee must be brought within one year of the death of the decedent, or parol evidence is not admissible. However, the jurisprudence has specifically held that the "dead man's statute" does not prevent parol evidence in an action to alter an instrument. *See Hallaron v. Pinewood Mall Shopping Ctr., Inc.*, 504 So.2d 922 (La.App. 1 Cir. 1987) and *Cordova v. Cordova*, 382 So.2d 1050 (La.App. 2 Cir. 1980). The court in *First State Bank & Trust Co. of East Baton Rouge Parish v. Seven Gables, Inc.*, 501 So.2d 280, 285 (La.App. 1 Cir. 1986), *writ denied*, 502 So.2d 103 (La.1987), discussed the reasoning for allowing parol evidence in this situation:

> The parol evidence is not offered to vary the terms of the written instrument but rather to show that the writing does not express the true intent or agreement of the parties. *Valhi, Inc. v. Zapata Corp.*, 365 So.2d 867, 870 (La.App. 4th Cir. 1978). As one commentator has noted: "Because mistake in expressing the terms of a written transaction is so common, it would be intolerable to refuse correction of the writing." Comment, *Parol Evidence in Louisiana*, 47 Tul.L.Rev. 381, 386 (1973).

Therefore, the trial court did not improperly admit parol evidence.

## II. *Clear and Convincing Evidence.*

The trial court is within its authority to consider and ultimately grant an order for reformation of a trust document, provided the mover has met the burden of

proving reformation was warranted by clear and convincing evidence. *Agurs v. Holt*, 232 La. 1026, 95 So.2d 644 (1957). Michael argues that the evidence presented at trial did not rise to the level of clear and convincing. The standard for appellate review of factual determinations by the trial court is the manifest error-clearly wrong standard. *Cheairs v. State ex rel. DOTD*, 03-680 (La. 12/3/03), 861 So.2d 536. Under this standard, the judgment of the trial court must be affirmed in this instance, even if there are two permissible views of the evidence. Provided one view supports the trial court's clear and convincing finding, we must affirm the judgment.

As stated previously, the questionnaire and notes were appropriately entered into evidence. Those exhibits support the testimony of John Vermillion that Ms. Greer intended to include the mobile home with the tract of land bequeathed to Gary Patrick. Further, the testimony of Dwight Lankford, who discussed in person the allocation of the property and homes with Ms. Greer, likewise indicated Ms. Greer's desire to include the mobile home in her bequest to Gary Patrick. Thus, the testimony of the person responsible for generating the trust document and the available circumstantial evidence are consistent and support the motion for reformation by clear and convincing evidence. Therefore, we cannot say the trial court erred in finding the requested motion for reformation was sufficiently proven.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, Michael Greer.

**AFFIRMED.**