ROBERT E. RUEL, III, JANINE RUEL JUNEAU, KRISTEN RUEL TRICHE, AND JAMES S. RUEL, INDIVIDUALLY AND IN HIS CAPACITY AS TRUSTEE OF THE SALLY H.P. RUEL INTER VIVOS REVOCABLE TRUST

VERSUS

SALLY PULVER DALESANDRO

NO. 18-CA-224

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 727-836, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING


July 09, 2019


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Stephen J. Windhorst, and Hans J. Liljeberg


**REVERSED AND REMANDED**
   **HJL**
   **JGG**
   **SJW**

COUNSEL FOR PLAINTIFF/APPELLANT,
ROBERT E. RUEL, III, JANINE RUEL JUNEAU, KRISTEN RUEL TRICHE,
AND JAMES SCOTT RUEL, INDIVIDUALLY AND IN HIS CAPACITY AS
TRUSTEE OF THE SALLY H.P. RUEL INTER VIVOS REVOCABLE TRUST

    David P. Salley
    Stephannie McKinney
    Sharon I. Corona
    Davidson S. Ehle, III

COUNSEL FOR DEFENDANT/APPELLEE,
SALLY RUEL DALESANDRO

    Richard D. Mere

**LILJEBERG, J.**

Plaintiffs/Appellants, Robert E. Ruel, III, Janine Ruel Juneau, Kristen Ruel Triche and James Scott Ruel, individually and in his capacity as trustee of the Sally H.P. Ruel Inter Vivos Revocable Trust (hereinafter collectively referred to as "plaintiffs"), seek review of the trial court's December 11, 2017 judgment, which granted a motion for judgment notwithstanding the verdict raised by appellee, Sally Pulver Dalesandro. The trial court vacated the verdicts returned by a jury in favor of plaintiffs and entered rulings in favor of Ms. Dalesandro. For reasons stated more fully below, we reverse the trial court's judgment granting Ms. Dalesandro's motion for judgment notwithstanding the verdict, reinstate the verdicts rendered by the jury in favor of plaintiffs and remand this matter to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter involves a dispute arising from a revocable trust – the Sally H.P. Ruel Inter Vivos Revocable Trust – established on February 25, 1994 (the "Trust"). At the time of the creation of the Trust, Ms. Dalesandro was married to Dr. Robert E. Ruel, Jr.[1] Plaintiffs are Dr. Ruel's children from a prior marriage. Ms. Dalesandro was the settlor who created the Trust.[2] The Trust named plaintiffs as the principal beneficiaries and their father, Dr. Ruel, as the income beneficiary.[3] The Trust states that it was created for the benefit of Dr. Ruel's children. Robert E.

---

[1] Dr. Ruel's marriage to Ms. Dalesandro was his third marriage.

[2] La. R.S. 9:1761 defines a settlor as "a person who creates a trust."

[3] La. R.S. 9:1725 defines principal and income beneficiaries as follows:

> (2) 'Income beneficiary' means a beneficiary to whom income is payable, presently, conditionally, or in the future, or for whom it is accumulated, or who is entitled to the beneficial use of principal presently, conditionally, or in the future, for a time before its distribution.
>
> * * *
>
> (4) 'Principal beneficiary' means a beneficiary presently, conditionally, or ultimately entitled to principal.

Ruel, III ("Robbie Ruel"), was initially designated as the trustee. In 2002, James Scott Ruel ("Scott Ruel") was substituted as trustee. Attorney Bruce Miller drafted the Trust and was appointed as the attorney to represent the Trustee.

The evidence presented at trial revealed that the Trust was originally drafted with Dr. Ruel as both the settlor and income beneficiary, and plaintiffs as principal beneficiaries. Robbie Ruel testified, and Ms. Dalesandro and Mr. Miller did not dispute, that due to financial difficulties resulting from a poor investment decision which Dr. Ruel faced around the time the Trust was created, Mr. Miller recommended that Dr. Ruel restructure the Trust to substitute Ms. Dalesandro as the settlor in place of Dr. Ruel. According to Robbie Ruel, Mr. Miller advised this change in order to provide an additional layer of protection against possible seizure by creditors of Dr. Ruel's assets which were placed into the Trust.

Dr. Ruel died on October 10, 2011. Shortly after his death, Bruce Miller contacted trustee, Scott Ruel, about executing documents to revoke the Trust and transfer title to the immovable property held by the Trust to Ms. Dalesandro. Plaintiffs contend that on January 19, 2012, based on Mr. Miller's representations that Ms. Dalesandro still had the right to revoke the Trust, Ms. Dalesandro and Scott Ruel executed documents that revoked the Trust and transferred title to four pieces of immovable property to Ms. Dalesandro, including an eighty percent (80%) interest in property located at 210 Highway 21 in Madisonville, Louisiana , a condominium in Redstick Lofts in Baton Rouge, Louisiana, property in Gunnison, Colorado, and property located at 450 Hesper Avenue in Metairie, Louisiana.

Ms. Dalesandro subsequently sold the condominium in Redstick Lofts to a third party and in January 2013, Scott Ruel purchased the eighty percent (80%) interest in the property located in Madisonville, Louisiana. In May 2013, Ms. Dalesandro attempted to sell the property located on Hesper Avenue. However, an

attorney researching the title for this property determined the sale could not proceed due to title issues created by the terms of the Trust – specifically that the Trust terminated at Dr. Ruel's death and that plaintiffs obtained ownership rights in the property at that point. In response, Bruce Miller contacted Robbie Ruel and requested that plaintiffs execute documents that would serve to quiet title to the property in favor of Ms. Dalesandro. Scott Ruel testified that Robbie contacted him and they reviewed the terms of the Trust in light of the issues raised by the title attorney. Scott testified that at that point, he realized the Trust terminated when his father died.

Plaintiffs relied on the language of Section 2.1 of the Trust to support their position that the Trust terminated at the time of their father's death:

> Term. Except as provided in Section 1.3, this trust shall terminate as to each principal beneficiary upon the death of the Settlor's husband or when the beneficiary attains age 35, whichever last occurs.[4]

As noted above, Dr. Ruel died on October 10, 2011, and on that date all of the principal beneficiaries (plaintiffs) had attained the age of 35. As a result, plaintiffs took the position that the Trust terminated as to all principal beneficiaries on October 10, 2011. Plaintiffs refused to sign the documents requested by Mr. Miller to quiet title in favor of Ms. Dalesandro, and instead demanded that she return the unsold Trust property to them, as well as the funds she received from the prior sales of two of the Trust properties. Plaintiffs argued that the documents executed in January 2012 to revoke the Trust and to transfer the Trust property to Ms. Dalesandro were invalid because the Trust previously terminated by its own terms at the time of Dr. Ruel's death in October 2011, and at that time, ownership

---

[4] Section 1.3 of the Trust provides as follows:

> Revocability. At any time the Settlor may, by signed instrument delivered to the Trustee, revoke this trust, amend it in any manner, or withdraw any property from the trust. No amendment changing the powers or duties of the Trustee shall be effective unless approved in writing by the Trustee.

of the immovable property transferred to plaintiffs as they were all 35 or older at the time of their father's death.

Ms. Dalesandro refused plaintiffs' demands, and on June 11, 2013, they filed this lawsuit seeking a declaration that the Trust terminated on October 10, 2011, upon the death of their father. Plaintiffs also sought to set aside the authentic acts that revoked the Trust and transferred the property held by the Trust to Ms. Dalesandro, and sought to recover all sums she received from the sale of the immovable properties.

On January 5, 2015, Ms. Dalesandro filed a reconventional demand against plaintiffs seeking to reform the Trust or alternatively, to nullify the Trust. Ms. Dalesandro alleged that when she established the Trust in 1994, she intended for the Trust to terminate at her death and that the Trust failed to reflect her intent as the settlor of the Trust. Ms. Dalesandro alleged in her reconventional demand that Section 2.1 of the Trust, as well as Sections 1.2, 1.3 and 3.2, should be reformed to add language providing for the continuation of the Trust until her death. On January 9, 2017, Ms. Dalesandro filed an amended, restated and superseding reconventional demand which limited her request to reform the Trust to only add the following highlighted phrase "the Settlor" to Section 2.1:

> 2.1 Term.
>
> Except as provided in Section 1.3, this trust shall terminate as to each principal beneficiary upon the death of *__the Settlor,__* the Settlor's husband or when the beneficiary attains age 35, whichever last occurs.

Plaintiffs amended their petition on October 9, 2013, to add a legal malpractice claim against Mr. Miller as the attorney for the Trust, based on the alleged incorrect advice he provided for the trustee to transfer the Trust property to Ms. Dalesandro after Dr. Ruel's death.[5] Almost two and a half years later, on

---

[5] This claim was not presented to the jury and according to the parties and the record, the legal malpractice claim against Mr. Miller is still pending.

January 28, 2016, Mr. Miller executed a document entitled "Act of Correction" and recorded it in the conveyance records for Jefferson Parish. In this document, Mr. Miller stated that he committed a clerical error in 1994 when he drafted the Trust, by failing to include the highlighted term "the Settlor" immediately before the words "the Settlor's husband" in Section 2.1 of the Trust as follows:

> Term. Except as provided in Section 1.3, this trust shall terminate as to each principal beneficiary upon the death of ***the Settlor,*** the Settlor's husband or when the beneficiary attains age 35, whichever occurs last.

The Act of Correction explained that La. R.S. 35.2.1 permits a notary public to file an act of correction to correct a clerical error in a notarial act he drafted or before whom it passed. The Act of Correction further stated that the clerical error is evidenced by references in other provisions of the Trust to the death of the Settlor, particularly in Sections 3.2, 3.3, 4.2(H) and 4.4.[6]

---

[6] These provisions of the Trust referring to the death of the "settlor," as opposed to the death of the "settlor's husband," are highlighted as follows:

> 3.2 Death of the Settlor. After the Settlor's husband has died, this trust shall continue as to the interest of any principal beneficiary under the age of 35, subject to the following conditions. The Trustee shall pay the net income of the Trust attributable to each beneficiary's legitime to the beneficiary at least annually or at such more frequent intervals as the Trustee deems fit. Income not attributable to a beneficiary's legitime may be distributed or accumulated in such amounts as the Trustee determines in the Trustees' sole discretion. The Trustee may pay to or apply for a beneficiary's benefit so much of the beneficiary's share of accumulated income, principal, or both, as the Trustee determines in the Trustee's sole discretion, notwithstanding the spendthrift provisions of Section 3.5. After ***the Settlor has died***, the Trustee shall make the following distributions to each principal beneficiary:
>
> > Upon the beneficiary's attainment of age 35, the remainder of the beneficiary's portion of the trust as it shall then exist.
> >
> > Any distribution of principal to a beneficiary shall be charged first against the beneficiary's legitime, if any, held in the Trust. The Trustee shall make an immediate distribution to a beneficiary of a beneficiary's entire interest in the trust if the beneficiary is age 35 or over at ***the death of the Settlor***.
>
> 3.3 Substitution of Beneficiaries. If a principal beneficiary dies during the term of this trust wh***ile Settlor is alive***, the principal beneficiary's interest shall remain in trust for the benefit of his or her heirs or legatees until such time as ***Settlor has died***. If a principal beneficiary dies during the term of this trust after ***Settlor has died***, the principal beneficiary's interest shall be distributed to the beneficiaries' heirs or legatees. Notwithstanding the foregoing, if a principal beneficiary dies intestate and without descendants during the term of this trust, the deceased beneficiary's interest shall vest in the beneficiary's surviving siblings as substitute principal beneficiaries, in equal portions, subject to the terms of this Trust. Distributions to the substitute principal beneficiaries shall be made after ***the death of the Settlor*** in accordance with Section 3.2, depending upon the age of each substitute principal beneficiary.

Following the filing of the Act of Correction, the parties engaged in extensive motion practice. Among the motions relevant to this appeal, on April 8, 2016, plaintiffs filed a motion in limine seeking to revoke and redact the Act of Correction from the conveyance records. Plaintiffs also requested that the trial court prohibit Ms. Dalesandro from introducing the Act of Correction into evidence at trial. Plaintiffs argued that the Act of Correction was an improper effort to reform the Trust over 22 years after its creation. They argued the added language resulted in an impermissible and material change to the Trust and did not serve to correct a "clerical error." The trial court held a hearing on the motion in limine on May 25, 2016, and decided to defer this issue to trial.

On July 19, 2016, Ms. Dalesandro filed a motion for summary judgment arguing the Trust continued to exist after Dr. Ruel's death, because Section 3.2 of the Trust did not require distribution of the Trust assets until after the settlor's (Ms. Dalesandro) death. On September 26, 2016, plaintiffs filed a cross-motion for summary judgment arguing the Trust terminated on the date of Dr. Ruel's death pursuant to Section 2.1 of the Trust. The trial court held a hearing on October 26, 2016, and denied both motions finding that these issues required the consideration of evidence regarding the settlor's intent, and must be resolved following a trial.

According to the parties, they agreed to set the matter for a jury trial to determine two issues – whether the Act of Correction corrected a clerical error and

---

4.2 **Additional Powers.** Without limiting Section 4.1, the Trustee shall have the following powers:

* * *

H. After *the death of the Settlor*, to pay any and all estate and inheritance taxes for which the Settlor's estate may be responsible, whether or not such taxes constitute a formal lien on trust property, in the Trustee's sole discretion. After *the death of the Settlor*, to pay any and all estate and inheritance taxes for which a beneficiary may be responsible, whether or not such taxes constitute a formal lien on trust property, in the Trustee's sole discretion.

4.4 **Accounting.** No annual accounting shall be required by the Trustee unless *the Settlor has died*.

whether Ms. Dalesandro, as settlor, intended for the Trust to continue until her death. On December 4, 2017, the jury trial commenced. Following three days of testimony and the introduction of numerous exhibits into evidence, the trial court presented the jury with two questions:

1) Did Plaintiffs, Robert E. Ruel, III, Jasmine Ruel Juneau, Kristen Ruel Triche, and James Scott Ruel, prove by a preponderance of the evidence that the Act of Correction filed by Bruce Miller and adding the words "the Settlor" to Section 2.1 of the Sally H.P Ruel Inter Vivos Revocable Trust did not correct a clerical error?

2) Did Sally Ruel Dalesandro prove by clear and convincing evidence that her intent was for the Sally H.P. Ruel Inter Vivos Revocable Trust to continue for her lifetime unless she revoked it?

On December 7, 2017, the jury returned a verdict in favor of plaintiffs on both issues – answering "yes" to Question 1 and "no" to Question 2. Accordingly, the jury determined that plaintiffs proved by a preponderance of the evidence that the Act of Correction did not correct a clerical error and that Ms. Dalesandro did not prove by clear and convincing evidence that she intended for the Trust to continue for her lifetime unless she revoked it.

Plaintiffs moved the trial court to make the jury verdict the judgment of the court. Immediately thereafter, Ms. Dalesandro made an oral motion for a judgment notwithstanding the verdict ("JNOV"). The trial court set a schedule for the parties to submit briefing regarding the requested JNOV. However, on the following Monday, December 11, 2017, the trial court requested that counsel for the parties appear in open court that same afternoon. At the hearing, the trial court first entered a written judgment in favor of plaintiffs on the jury's verdict. Immediately after entering this judgment, the trial court granted Ms. Dalesandro's oral motion for JNOV and overturned the jury's verdict on both questions presented on the verdict form. The trial court provided the following oral reasons for its decision to grant the JNOV:

Prior to trial on October 26, 2016, this Court denied cross motions for summary judgment regarding the validity of the Act of Correction filed by Bruce Miller, the attorney who drafted the trust pursuant to Louisiana Revised Statute 35:2.1. In considering the cross motions, the Court studied the trust document and concluded that it was ambiguous on its face. For example, Paragraphs 2.1 and 3.2 cannot be reconciled as written. While 2.1 seems to provide the trust terminated upon Dr. Ruel's death, Section 3.2 does not allow distribution until after Sally Ruel Dalesandro's death.

At the hearing on the cross motions for summary judgment, Sally Dalesandro argued that the words "the settlor" were erroneously omitted from Section 2.1. With the addition of these two words, she argued the entire trust document makes since. [sic] Thus, she argued the omission was a clerical error that should - - that could be corrected by an Act of Correction. Plaintiffs opposed her motion and sought a judgment that the Act of Correction was invalid. Due to the inconsistencies in the trust document, the Court denied both motions in favor of a trial to hear evidence of the settlor's intent.

\* \* \*

It is well-settled in Louisiana law that the settlor's intention controls and is to be ascertained and given effect unless contrary to law or public policy. Our trust code rules set forth this policy of protecting the trust instrument from any modification or termination contrary to the settlor's expressed intent.

At trial Sally Dalesandro testified that her intent when she executed the trust document was to have the revocable trust continued for her lifetime unless she revoked it. Her testimony was corroborated by the testimony of Bruce Miller and Patsy Lea. Bruce Miller testified that he made a clerical error in omitting two words.

Furthermore, the evidence establishes that all . . . parties, including the Plaintiffs acted as if the trust continued after Dr. Ruel's death. James Scott Ruel as trustee executed a document transferring all of the trust property to Sally Dalesandro after his father's death. He even purchased a piece of immovable property from her, thus recognizing her as owner. Plaintiffs presented absolutely no evidence that Sally Dalesandro's intent was to have the trust terminate upon Dr. Ruel's death.

The trial court further reasoned that the "unrebutted evidence established that [Ms. Dalesandro's] intent as settlor was for the trust to continue throughout her lifetime unless she revoked it." As a result, the trial court determined that the evidence presented to the jury pointed so strongly and overwhelmingly in favor of Ms. Dalesandro that reasonable jurors could not have arrived at a verdict in favor of plaintiffs.

On the same day, the trial court entered a written judgment granting the motion for a JNOV and entering judgment in favor of Ms. Dalesandro on both issues presented to the jury as follows:

> IT IS ORDERED, ADJUDGED AND DECREED that Judgment Notwithstanding the Verdict is GRANTED as to question 1 presented to the jury. No reasonable juror could have concluded that Sally Dalesandro's intent was for the trust to terminate upon Dr. Robert E. Ruel, Jr.'s death. The Act of Correction reflects her intent and corrects a clerical error made by her attorney. Judgment is hereby entered in favor of Sally Ruel Dalesandro against Robert E. Ruel, III, Janine Ruel Juneau, Kristen Ruel Triche, and James Scott Ruel holding the Act of Correction valid under La. R. S. 35:2.1.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Judgment Notwithstanding the Verdict is GRANTED as to question 2 presented to the jury. The trust document is internally inconsistent and ambiguous. Sally Dalesandro proved by clear and convincing evidence that she is entitled to reform Section 2.1 of the trust document to reflect her intent at the time of its execution. Judgment is hereby entered in favor of Sally Ruel Dalesandro against Robert E. Ruel, III, Janine Ruel Juneau, Kristen Ruel Triche, and James Scott Ruel reforming the trust document by adding the omitted words as prayed for in Sally Ruel Dalesandro's Reconventional Demand.

Plaintiffs filed a timely motion for devolutive appeal, which the trial court granted on February 14, 2018. Upon review of the record, this Court determined that a potential jurisdictional issue existed because the December 11, 2017 judgment entered by the trial court lacked the appropriate decretal language to indicate that the judgment disposed of all claims existing between plaintiffs and Ms. Dalesandro.[7] Therefore, this Court exercised its supervisory jurisdiction and issued an order requesting that the trial court prepare an amended judgment containing the appropriate decretal language. This Court further requested that the trial court identify the specific language it intended to add to reform the Trust.

On November 13, 2018, the trial court provided an amended judgment which contained decretal language dismissing all claims raised by plaintiffs against

---

[7] We further note that the trial court did not designate the December 11, 2017 judgment as a final appealable judgment pursuant to La. C.C.P. art. 1915(B).

Ms. Dalesandro. The trial court also amended its judgment with respect to Ms. Dalesandro's reconventional demand seeking reformation of the Trust by adding language not only to Section 2.1 of the Trust as requested by Ms. Dalesandro in her amended, restated and superseding reconventional demand filed on January 9, 2017, but also to Sections 1.2, 1.3 and 3.2 of the Trust.[8]

**DISCUSSION**

In their only assignment of error, plaintiffs argue the trial court erred by granting Ms. Dalesandro's motion for a JNOV and reversing both decisions rendered by the jury. Plaintiffs further contend the trial court erred by stating in its oral reasons that no evidence existed to support the jury's finding that Ms. Dalesandro failed to prove her intent for the Trust to continue during her lifetime.

*JNOV*

A JNOV is a procedural device authorized by La. C.C.P. art. 1811, by which the trial court may modify the jury's findings to correct an erroneous jury verdict. *Pitt v. Louisiana Medical Mutual Insurance Company*, 16-1232 (La. 3/15/17), 218 So.3d 58, 64. La. C.C.P. art. 1811 does not set out the criteria a court must use when deciding a motion for JNOV. Rather, a trial court's authority to grant a JNOV is limited by jurisprudence to those cases where the jury's verdict is absolutely unsupported by any competent evidence. *Thistlethwaite v. Gonzalez*, 12-130, 12-131 (La. App. 5 Cir. 12/18/12), 106 So.3d 238, 251; *Davis v. Lazarus*, 04-582 (La. App. 4 Cir. 3/8/06), 927 So.2d 456, 461, *writ denied*, 06-1102, 06-1114 (La. 6/23/06), 930 So.2d 988 and 989. The strict criteria for granting a JNOV is grounded in the rule that the jury is the trier of fact. *Smith v. State, Dept. of Transp. & Development*, 04-1317, 04-1594 (La. 3/11/05), 899 So.2d 516, 525.

---

[8] According to the record, the trial court added all of the reformatory language requested in Ms. Dalesandro's original reconventional demand to reform the Trust, rather than the more limited reformatory language requested only with respect to Section 2.1 of the Trust in her subsequent superseding reconventional demand filed in 2017.

In ruling on a motion for a JNOV, the trial court considers whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. *Joseph v. Broussard Rice Mill, Inc.*, 00-628 (La. 10/30/00), 772 So.2d 94, 99. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. *Id.* The trial court must deny the motion if evidence opposing the motion is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Id.* In its consideration, the trial court is not to evaluate the credibility of the witnesses and it must resolve all reasonable inferences or factual questions in favor of the non-moving party. *Id.*

The standard of review for a JNOV on appeal is a two-part inquiry. *Skillman v. Riverside Baptist Church of Jefferson Parish*, 14-727 (La. App. 5 Cir. 5/28/15), 171 So.3d 407, 419. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. *Id.* In other words, the appellate court considers whether the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. After determining whether the trial court correctly applied the standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Id.*

### Settlor's Intent

Because the issue of Ms. Dalesandro's intent appeared to provide the basis for the trial court to overturn both verdicts rendered by the jury, we first address plaintiffs' argument that the trial court erred by setting aside the jury's decision

that Ms. Dalesandro did not prove her intent for the Trust to continue to exist during her lifetime.

Louisiana has a strong public policy in effectuating and protecting a settlor's intent as set forth in a trust instrument. *McCaffery v. Lindner*, 18-163 (La. App. 5 Cir. 12/27/18), 263 So.3d 1205, 1210, *writ denied*, 19-140 (La. 3/18/19), 267 So.3d 89. A settlor's intent controls, unless contrary to law or public policy. *Id*.; *Richards v. Richards*, 408 So.2d 1209, 1211 (La. 1981).

As explained above, the issue of Ms. Dalesandro's intent is relevant to her claim seeking to reform Section 2.1 of the Trust. Louisiana jurisprudence required Ms. Dalesandro to prove her intent by clear and convincing evidence in order to prevail on her reformation claim. *See In Re Succession of Greer*, 08-118 (La. App. 3 Cir. 6/5/08), 987 So.2d 305, 309 ("The trial court is within its authority to consider and ultimately grant an order for reformation of a trust document, provided the mover has met the burden of proving reformation was warranted by clear and convincing evidence."); *see also* Edward E. Chase, Jr., 11 *Louisiana Civil Law Treatise, Trusts* (2nd Ed.), §3.3, fn.25.

Furthermore, when a party seeks to reform a written instrument in general, Louisiana law places the burden of proof on the party seeking reformation to establish error by clear and convincing evidence. *See Peironnet v. Matador Resources Co.*, 12-2292, 12-2377 (La. 6/28/13), 144 So.3d 791, 809. Finally, plaintiffs note that Section 415 of the Uniform Trust Code requires proof by clear and convincing evidence of the settlor's intentions to reform the terms of a trust.[9]

At trial, Ms. Dalesandro, Mr. Miller and Ms. Dalesandro's friend, Patsy Lea, testified that Ms. Dalesandro intended for the Trust to continue to exist during her

---

[9] Section 415 of the Uniform Trust Code provides: "The Court may reform the terms of a Trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence what the Settlor's intention was and that the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement."

lifetime. The trial court determined that a JNOV was warranted because the jury was not presented with any relevant evidence to contradict Ms. Dalesandro's evidence regarding her intent for the Trust to continue until her death. The trial court further noted that plaintiffs acted as if the Trust continued after Dr. Ruel's death based on the documents executed by Scott Ruel as trustee to transfer the Trust property to Ms. Dalesandro.

On appeal, plaintiffs argue that Scott Ruel testified that he agreed to execute the documents to transfer the Trust property to Ms. Dalesandro based on his trust in the advice he received from Mr. Miller. Plaintiffs also argue that they presented a plethora of evidence to the jury which warranted its rejection of the evidence introduced by Ms. Dalesandro regarding her intent. As outlined more fully below, we agree with plaintiffs and find that competent evidence existed to support the jury's finding that Ms. Dalesandro did not prove her intent for the Trust to continue during her lifetime by clear and convincing evidence.

We find that one of the most compelling pieces of evidence countering Ms. Dalesandro's evidence regarding her intent was a document entitled "Extract of Sally H.P. Ruel, Revocable Trust." Ms. Dalesandro swore to and signed the extract in the presence of a notary on April 18, 2007, in conjunction with the purchase of the Redstick loft condominium in Baton Rouge. The extract summarized the terms of the Trust and was recorded in the East Baton Rouge Parish mortgage records. In this document, Ms. Dalesandro stated that "[u]pon the death of the income beneficiary [Dr. Ruel], the trust shall continue until the youngest beneficiary attains the age of 35," thereby indicating that the Trust otherwise terminated upon Dr. Ruel's death. In the following paragraph, the extract explained that the Trust is revocable and that Ms. Dalesandro could alter, amend or terminate the Trust during her lifetime. However, this paragraph did not contain language stating that the right to revoke continued after Dr. Ruel died.

Furthermore, on the prior day, April 17, 2007, Mr. Miller prepared a letter explaining the terms of the Trust, wherein he also stated that "[u]pon the death of the income beneficiary, the trust shall continue until the youngest principal beneficiary attains the age of 35." The letter indicates that a copy was sent to Ms. Dalesandro. Mr. Miller testified that he would have reviewed the terms of the Trust prior to preparing the abstract. When questioned as to why he did not identify and address the alleged clerical error in the termination provision contained in Section 2.1 of the Trust at this time, Mr. Miller's only explanation was that he made another mistake. We find that the extract and Mr. Miller's letter constitute competent evidence of such quality that reasonable minds could differ as to whether Ms. Dalesandro proved her intent for the Trust to continue during her lifetime by clear and convincing evidence.

In addition to these documents, plaintiffs also argued that a comparison of a draft of the Trust and the final executed Trust constituted important evidence supporting the jury's decision.[10] A review of the draft of the Trust reveals that it was originally written with Dr. Ruel as both the settlor and income beneficiary, and plaintiffs as principal beneficiaries. Ms. Dalesandro was not included as a beneficiary of the Trust property, and this draft did not include any language tying the termination of the Trust to Ms. Dalesandro's death. As explained above, Robbie Ruel testified, and Ms. Dalesandro and Mr. Miller did not dispute, that due to financial difficulties which Dr. Ruel faced around the time the Trust was created, Mr. Miller recommended that Dr. Ruel restructure the Trust to substitute

---

[10] The record contains two different versions of this draft of the Trust, one that included handwriting of Bruce Miller, Robbie Ruel and Dr. Ruel, and the same draft of the Trust with Dr. Ruel's handwriting redacted. While both documents were admitted into evidence, the trial court did not allow plaintiffs to publish the draft of the Trust with Dr. Ruel's handwriting to the jury. Plaintiffs did not raise this ruling as an assignment of error on appeal. Therefore, we will not consider the draft including Dr. Ruel's handwriting in our analysis of whether the jury could reasonably arrive at the verdict they reached.

Ms. Dalesandro as the settlor to provide an additional layer of protection for his assets.

Plaintiffs argued that the term, "the Settlor," which Ms. Dalesandro and Mr. Miller argued was missing from Section 2.1 of the Trust due to a clerical error, was actually contained in the prior draft entered into evidence and published to the jury. Section 2.1 as written in this earlier draft in fact indicated the Trust would terminate "upon the death of the Settlor:"

> 2.1 Term. Except as provided in Section 1.3, this trust shall terminate as to each principal beneficiary ***upon the death of the Settlor*** or when the beneficiary attains age 35, whichever last occurs. [Emphasis added.]

Accordingly, plaintiffs noted that Mr. Miller did not have to alter Section 2.1 of the draft for the Trust to continue to exist until the death of the new settlor, Ms. Dalesandro. However, in the executed Trust, Mr. Miller added "'s husband" after "Settlor", thereby eliminating the language that provided for the Trust to continue until the death of the new settlor, Ms. Dalesandro. Plaintiffs argued that if Ms. Dalesandro's true intent was for the Trust to continue until her death, as opposed to terminating upon Dr. Ruel's death, Mr. Miller would have left the words "the Settlor" unchanged. Furthermore, they argued that the jury understood this evidence established that the Trust was not intended to benefit Dr. Ruel's third wife to whom he had only been married for just over two and a half years, but rather to protect a lifetime of assets Dr. Ruel accumulated for the benefit of his children.

Ms. Dalesandro argues in opposition that other sections of the Trust provide evidence of her intent for the Trust to continue until her death. She notes that Section 1.3 of the Trust allowed her to revoke the Trust "at any time," including after the termination of the Trust, and that this provision modified the termination language contained in Section 2.1. However, while Section 1.3 allowed Ms.

Dalesandro the right to revoke the Trust, it does not contain unequivocal language stating that this right continued after the Trust terminated. In fact, Mr. Miller testified before the jury that if the Trust terminated, Ms. Dalesandro's right to revoke the Trust would also cease to exist.

Ms. Dalesandro also points to other provisions of the Trust, including Sections 3.2 and 3.3 quoted above, which contain language referring to events triggered by the "settlor's death," as opposed to the "settlor's husband's death." Ms. Dalesandro argued that these provisions prove the Trust was intended to continue until her death. Plaintiffs counter that these provisions are irrelevant to the present matter because they address scenarios that did not occur and therefore, were not triggered.[11] While we recognize that references to the "settlor's death" in other provisions of the Trust may create inconsistencies in the interpretation and application of certain terms of the Trust, they alone do not serve to undermine the jury's determination that Ms. Dalesandro did not prove by clear and convincing evidence that she intended for the Trust to continue until her death. As the trial court noted in its oral reasons, it determined that a trial on the issue of the settlor's intent was necessary due to inconsistencies contained in the Trust.

In addition to the abstract and language of the Trust, plaintiffs also noted that they introduced evidence establishing that all of the property placed in the Trust initially belonged to Dr. Ruel and that the intent was that the Trust property would be acquired by his children as the principal beneficiaries. When the Trust was executed on February 25, 1994, Dr. Ruel also signed two acts of donation. In the first Act of Donation, unrelated to the Trust, Dr. Ruel donated 359 items solely to Ms. Dalesandro. In the second Act of Donation, Dr. Ruel donated numerous

---

[11] Plaintiffs argue that Section 3.2 addressed the scenario where a principal beneficiary had not yet attained the age of 35 at the time of Dr. Ruel's death and Section 3.3 addressed the scenario where a principal beneficiary died before the Trust terminated, neither of which occurred.

items to the Trust, including Ruel family heirlooms. Plaintiffs argued that these were items Dr. Ruel intended to leave to his children as opposed to his new wife.

Plaintiffs also introduced evidence establishing that prior to their marriage, Dr. Ruel and Ms. Dalesandro entered into a pre-nuptial agreement creating a separate property regime during their marriage. On June 2, 2009, Dr. Ruel emailed Mr. Miller to schedule a meeting to review their wills and trusts, including specifically the "Sally H. P. Ruel Revocable Trust." Shortly thereafter, Dr. Ruel and Ms. Dalesandro rescinded their pre-nuptial agreement and Dr. Ruel executed a new will leaving his entire estate to Ms. Dalesandro. In order to effectuate the rescission of the pre-nuptial agreement, Mr. Miller testified that the parties needed to execute mutual donations in favor of one another to create a community property regime. Plaintiffs note that none of the property contained in the Trust was included in the detailed description of the property Dr. Ruel donated to Ms. Dalesandro. They further argue that if the true intent was for the Trust to continue past Dr. Ruel's death and for the property to benefit Ms. Dalesandro, then they could have decided to revoke the Trust and make the Trust property part of the newly formed community.

Robbie Ruel also testified that at the time of the execution of the Trust, Dr. Ruel and Ms. Dalesandro signed an agreement providing for Ms. Dalesandro to renounce her interests in the Trust property in the event they divorced. Mr. Miller's file contained an unsigned copy of the agreement and though he did not have an independent recollection as to whether the parties signed the agreement, Mr. Miller testified that he recalled discussions with Dr. Ruel regarding his desire to protect the Trust assets in the event of a divorce. Plaintiffs argued that all of this evidence further supported their position that the intent was for the Trust to end at Dr. Ruel's death and for Dr. Ruel's children to acquire the property as beneficiaries of the Trust.

In reaching its decision to grant the JNOV, the trial court's oral reasons for judgment seem to indicate that it chose to disregard all of this competing evidence presented by plaintiffs based on its determination that plaintiffs only provided proof of Dr. Ruel's intent, as opposed to evidence of the settlor's intent. We find this determination was manifestly erroneous for several reasons. First, the abstract executed by Ms. Dalesandro would certainly constitute relevant evidence of her intent as to when the Trust terminated. Furthermore, considering the context under which the Trust was created, Dr. Ruel's intentions and involvement in the creation of the Trust were relevant in determining Ms. Dalesandro's intent. Mr. Miller testified that he received his instructions regarding the creation and terms of the Trust from Dr. Ruel. Robbie Ruel testified that Ms. Dalesandro was not involved in their discussions with Mr. Miller. While Ms. Dalesandro disagreed with this testimony, she admitted that she and Dr. Ruel worked together with Mr. Miller in determining how to structure the Trust. She further agreed that protecting Dr. Ruel's assets was a primary reason for creating the Trust.

Based on the foregoing, it was manifestly erroneous for the trial court to conclude that no competent evidence existed to support the jury's verdict with respect to Ms. Dalesandro's intent. We find that the competing evidence outlined above in great detail was of such quality and weight that reasonable and fair-minded persons might reach different conclusions as to whether Ms. Dalesandro proved by clear and convincing evidence that she intended for the Trust to continue to exist until her death. According, we must find that the trial court was manifestly erroneous by granting Ms. Dalesandro's motion for a JNOV and entering judgment in favor of Ms. Dalesandro on this issue.

*Clerical Error*

Plaintiffs also argue that the trial court erred by granting a JNOV with respect to the jury's decision that the Act of Correction did not correct a clerical error. We agree that based on the evidence presented that reasonable jurors could reach this verdict and find that the trial court was also manifestly erroneous in its decision to grant the JNOV on this issue.

La. R.S. 35.2.1 governs acts of correction and provides in pertinent part:

A. (1) A ***clerical error*** in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by any of the following:

> (a) The person who was the notary or one of the notaries before whom the act was passed.
> (b) The notary who actually prepared the act containing the error.
> (c) In the event the person defined in Subparagraphs (a) or (b) of this Paragraph is deceased, incapacitated, or whose whereabouts are unknown, then by a Louisiana notary who has possession of the records of that person, which records contain information to support the correction.

(2) The act of correction shall be executed before two witnesses and a notary public.

B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. ***The act of correction shall not alter the true agreement and intent of the parties.*** [Emphasis added.]

Accordingly, an act of correction is permissible only to correct a clerical error which does not alter the true agreement and intent of the parties. La. R.S. 35.2.1(B); *First Nat. Bank, USA v. DDS Const., LLC*, 11-1418 (La. 1/24/12), 91 So.3d 944, 957. Black's Law Dictionary (11th ed. 2019), defines a "clerical error" as "[a]n error resulting from a minor mistake or inadvertence and not from judicial reasoning or determination." *See also First Nat. Bank, USA*, 91 So.3d at 955. An act of correction cannot correct a substantive error or effect any substantive change

to the terms of the original document. *See City of Harahan v. State ex. rel. Div. of Admin.*, 08-106 (La. App. 5 Cir. 5/27/08), 986 So.2d 755, 761; *Cockerham v. Cockerham*, 12-1769 (La. App. 1 Cir. 10/3/13), 201 So.3d 253, 262. The record indicates that the jury was further advised by the trial court that "an error is not a clerical error if it arises from some intentional or deliberate reasoning, determination or thought process."

Mr. Miller testified that he executed the Act of Correction because, as quoted above, he inadvertently omitted the term "the Settlor" from Section 2.1 of the Trust that would have provided for the Trust to continue during Ms. Dalesandro's lifetime. Plaintiffs argue on the other hand that they elicited testimony and introduced evidence to support a finding that the Act of Correction did not correct a clerical error, but rather resulted from the intentional and deliberate reasoning, determination and thought process of Mr. Miller and Ms. Dalesandro's attorney, Bill Edelman.

The jury heard testimony from Mr. Miller explaining that when he met with Dr. Ruel and Ms. Dalesandro to sign the Trust in 1994, he would have reviewed the important terms of the provision with her, but failed to recognize the need to add the omitted language. Furthermore, as explained above, Mr. Miller testified that he reviewed the Trust again in 2007 when he prepared a letter summarizing the terms of the Trust and again neglected to recognize the alleged clerical error. Mr. Miller explained that he first realized that a clerical error existed in Section 2.1 when he received a phone call from the title attorney preparing the Act of Sale for the Hesper Avenue property. When plaintiffs' counsel asked Mr. Miller why he did not prepare an Act of Correction at that time, he testified that "he probably should have."

Plaintiffs further argue that Mr. Miller waited an additional two and a half years until after they filed a lawsuit against him before he executed the Act of

Correction. Ms. Dalesandro's attorney, Bill Edelman, drafted the Act of Correction for Mr. Miller's signature. Mr. Miller also acknowledged at trial that by adding the language regarding "the Settlor" to Section 2.1 of the Trust, plaintiffs' malpractice claims against him would be extinguished and that this is one of the reasons that he executed the Act of Correction.

We find that the evidence outlined above was of such quality and weight that reasonable and fair-minded persons might reach different conclusions as to whether the Act of Correction corrected a clerical error or was the result of Mr. Miller's intentional and deliberate reasoning as part of an effort to end the litigation against him. According, we must find that the trial court was manifestly erroneous by granting Ms. Dalesandro's motion for a JNOV and entering judgment in favor of Ms. Dalesandro on the clerical error issue.

**DECREE**

Based on the foregoing, we find that the trial court was manifestly erroneous in granting the motion for judgment notwithstanding the verdict raised by appellee, Sally Dalesandro. Therefore, we reverse the trial court's judgment granting Ms. Dalesandro's motion for judgment notwithstanding the verdict, reinstate the verdicts rendered by the jury in favor of plaintiffs and remand this matter to the trial court for further proceedings.

**REVERSED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JULY 9, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**MARY E. LEGNON**
INTERIM CLERK OF COURT

# 18-CA-224

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
DAVID P. SALLEY (APPELLANT)      RICHARD D. MERE (APPELLEE)        DAVID S. DALY (APPELLEE)
ELLIOT M. LONKER (APPELLEE)      DAVIDSON S. EHLE, III (APPELLANT)   STEPHANNIE MCKINNEY (APPELLANT)

### MAILED

ERIKA M. CUNNINGHAM (APPELLANT)     SHARON I. CORONA (APPELLANT)
MARY E. SCHONEKAS (APPELLANT)       ATTORNEY AT LAW
ATTORNEYS AT LAW                    3801 NORTH CAUSEWAY BOULEVARD
365 CANAL STREET                    SUITE 207
SUITE 1710                          METAIRIE, LA 70002
NEW ORLEANS, LA 70130